Filed 10/3/14  Modified and certified for publication 10/29/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEAN KASEM, | B246916 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC483947) |
| v. | |
| PETER R. DION-KINDEM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth White, Judge.  Affirmed.

Haney & Young, Steven H. Haney, Gregory L. Young, Paul Eisner, and Jean Kasem, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Kenneth C. Feldman, Craig E. Holden, and Jeffry A. Miller for Defendants and Respondents.

_____

Jean Kasem appeals from the judgment dismissing her legal malpractice action after the trial court sustained the demurrer of respondents Peter R. Dion-Kindem and Peter R. Dion-Kindem, P.C. (Dion-Kindem) to her third amended complaint without leave to amend. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

In 2003, Ralphs Grocery Company sublet the lower level of its commercial building space at 10309 West Olympic Boulevard to Jean Kasem's company, The Little Miss Liberty Round Crib Company (Little Miss Liberty); Ralphs operated its grocery store above the subleased premises. In 2007, water and sewage flowed into the subleased premises, damaging inventory. Kasem, individually and on behalf of Little Miss Liberty, retained Dion-Kindem to represent her in an action against Ralphs for breach of contract based on Ralphs' refusal to pay for the damage incurred. (*The Little Miss Liberty Crib Co. v. Ralphs Grocery Co.* (Super. Ct L.A. County, 2011, No. 410909).)

Ralphs asserted it had no liability, based on two provisions in the sublease. Section 14 provides in pertinent part: "Sublessor shall not be liable for injury or damage which may be sustained by Subtenant or any other person in or about the Demised Premises, to persons, goods, wares, merchandise or property, caused by or resulting from . . . water or rain which may leak or flow from or into any part of the Building of which the Demised Premises is a part or from the breakage, leakage, obstruction or any other such defect of the pipes, wires, appliances, plumbing or lighting fixtures of the same, whether said damage or injury results from conditions arising upon the Demised Premises or upon other portions of the Building of which the Demised Premises is a part or from the outside."

Section 12 of the sublease held Ralphs responsible for reasonable repair and maintenance of the premises, including all underground and overhead utilities and service lines, but limited its liability to an abatement of rent "for any loss, damage (including water damage)" resulting from Ralphs' failure to promptly or correctly perform repairs.

Little Miss Liberty asserted that the water and sewage backup was a "Hazardous Material" within the meaning of section 29 of the sublease, and that Ralphs was thus

2

required to indemnify it for damages caused by the release of hazardous material. Subdivision A of section 29 requires the subtenant to comply with "all federal, state and local laws, ordinances, and regulations" including various specified pollution control, conservation, toxic substances control, and environmental and hazardous materials laws "relating to industrial hygiene, environmental protection or the use, analysis, generation, manufacture, storage, disposal or transportation of any oil, flammable explosives, asbestos, urea formaldehyde, radioactive materials or waste, or other hazardous, toxic, contaminated or polluting materials, substances or wastes, including, without limitation, any 'hazardous substances,' 'hazardous wastes,' 'hazardous materials,' or 'toxic substances' under any such laws, ordinances or regulations (collectively 'Hazardous Materials')."

Under section 29, subdivision D of the sublease, Ralphs was obligated to indemnify its subtenant for all losses and expenses, including damage to property, resulting in whole or in part from Sublessor's or other tenants' "release, threatened release, discharge or generation of Hazardous Materials to, in, on, under, about or from the Sublessor's building or common areas of the Shopping Center parking."

The case was tried to the court. The trial court found that Little Miss Liberty's damages resulted from an obstruction or leakage in the pipes or plumbing, within the meaning of section 14 of the sublease. Pursuant to that section, Ralphs had no liability for the resulting damages. The court also found that to the extent the damages occurred as a result of Ralphs' failure to adequately or promptly repair the plumbing or drains, Little Miss Liberty was barred from recovery under section 12 of the sublease.

The court rejected Little Miss Liberty's claim that the discharge from the plumbing lines constituted "Hazardous Material" within the meaning of section 29 of the sublease. According to the court, section 29 relates only to environmental liability laws; the term "Hazardous Material" as used in that section is a term of art to be defined within the referenced environmental laws, ordinances and regulations, and Little Miss Liberty did not plead a violation of environmental law nor provide any credible evidence that the discharge from the plumbing lines constituted a "Hazardous Material" under any

3

environmental law. Little Miss Liberty cited to the Federal Water Pollution Control Act because the definition of "pollutant" in that statute included the word "sewage." (See 33 U.S.C. § 1362(6).) She also cited the Safe Drinking Water Act because its definition of "contaminant" is "any physical, chemical, biological, or radiological substance or matter in water." (42 U.S.C. § 300(f)(6).) The court rejected the argument that this was sufficient evidence to establish that "sewage" is a "hazardous, toxic, contaminated or polluting material, substance or waste" under those statutes. The court also observed that Little Miss Liberty failed to present evidence of substances or chemicals in the discharge from the plumbing lines other than water and sanitary sewage. Judgment was entered for Ralphs; Little Miss Liberty did not appeal.

Instead, Kasem brought this action for legal malpractice against her attorney, Dion-Kindem. In the third amended complaint, the charging pleading, she alleged Dion-Kindem committed legal malpractice by failing to designate and call an expert witness at trial on the issue of whether sewage qualified as a hazardous material under the sublease. The court sustained Dion-Kindem's demurrer to the third amended complaint without leave to amend. Kasem[1] appeals from the judgment of dismissal.

## DISCUSSION

In reviewing the sufficiency of a complaint against a general demurrer, we treat the demurrer as admitting all material facts properly pleaded, but not deductions or conclusions of fact or law; we also consider matters which may be judicially noticed. (*Cedar Fair, L.P. v. City of Santa Clara* (2011) 194 Cal.App.4th 1150, 1158–1159.)

To state a cause of action for legal malpractice, a plaintiff must plead the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession

---

[1] For the first time on appeal, Dion-Kindem claims Kasem has no standing to sue for malpractice because the underlying action was brought only in the name of Little Miss Liberty. We note that Jean Kasem signed the sublease on behalf of her company, Little Miss Liberty, and she retained Dion-Kindem to prosecute claims against Ralphs based on the sewage backup into the Little Miss Liberty premises; she signed that agreement "Jean Kasem, individually and on behalf of Little Miss Liberty Round Crib Company." As the contracting party, she has standing to sue for legal malpractice arising from Dion-Kindem's representation of her company.

4

commonly possess and exercise; breach of that duty; a proximate causal connection between the breach and the resulting injury; and actual loss or damage resulting from the attorney's negligence. (*Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 572.) In sustaining the demurrer to the third amended complaint, the court took judicial notice of the sublease between Kasem and Ralphs, and of the amended statement of decision in the underlying trial from which the claim of malpractice arose. These documents, which were properly considered, support the conclusion that Kasem cannot plead the breach of duty element necessary for legal malpractice.

The alleged negligence in this case is that Dion-Kindem failed to designate and call an expert witness at the underlying trial on the issue of whether sewage qualified as a "Hazardous Material" under the lease, even after the trial court denied Dion-Kindem's request to take judicial notice of particular statutes which included sewage in the definition of hazardous material. Kasem further alleged: "Had an expert witness been designated and called to testify, that expert witness would have testified that: [¶] 1) Sewage is regulated by the Clean Water Act a/k/a the Federal Water Pollution Control Act, which is one of the enumerated Federal Acts in Section 29(A) of the lease that are defined as 'Hazardous Materials Law.' 33 U.S.C. § 1251 et seq. Sewage is specifically defined as a 'pollutant' by that legislation. 33 U.S.C. § 1362(6). [¶] 2) Pursuant to the terms of the Lease, a 'polluting material' is included in the definition of 'Hazardous Materials.' Lease Sec. 29(A). [¶] 3) Similarly, 'sewage['] is defined as 'waste' under California law as well. California Health and Safe § 5410(a), 5411, and 5411.5(a). That statute is also one of the laws enumerated as 'Hazardous Materials Law' in Section 29(A) of the lease. [¶] 4) Pursuant to the terms of the Lease, 'hazardous, toxic, contaminated or polluting . . . wastes' are included in the definition of 'Hazardous Materials.' Lease Sec. 29(A)." The complaint also cites other laws, including the Los Angeles Municipal Code, that list sewage, sewage sludge, and biological waste as hazardous materials.

The problem with this claim is that Dion-Kindem properly sought judicial notice of the relevant statutes, which would have established as a matter of law that sewage is a hazardous material within the meaning of section 29 of the sublease. Under Evidence

Code section 451, "Judicial notice *shall* be taken of the following: [¶] (a) The decisional, constitutional, and public statutory law of this state and of the United States . . . ." (Italics added.) The court was required to take judicial notice of the federal and state statutes proffered by Dion-Kindem when the underlying case was tried. The court's refusal to do so was error, and this error formed the basis for the adverse result at trial.

In its amended statement of decision, the trial judge faulted Kasem for failing to produce expert testimony "that sewage discharged from the plumbing lines, as a general fact, constitutes 'Hazardous Material' within the meaning of Section 29 of the Sublease." The court noted Kasem "had the opportunity to call expert witnesses or any witness familiar and knowledgeable with the [Federal Water Pollution Control Act], [Safe Drinking Water Act], and/or environmental regulatory scheme set out in Section 29A and failed to do so."

Had the trial judge taken judicial notice of the referenced, relevant statutes, as required under Evidence Code section 451, subdivision (a), the question whether sewage was included within the definition of "Hazardous Material" would have been readily resolved. The testimony of an expert is limited to such an opinion as is "(a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact[.]" (Evid. Code, § 801, subd. (a).) The information in the referenced statutes is complex, aimed at protecting the quality of the nation's waters. (See *City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 619.) But these statutes were referenced in the underlying trial solely for their inclusion of sewage within the larger category of hazardous material—the term used in section 29 of the sublease. The consideration of statutes which expressly included sewage as a pollutant, and listed pollutants as coming within the statutory schemes referenced by section 29, was not a matter outside the trial court's common experience. To the extent statutory interpretation was an issue, that is a question of law to be determined by the court. (*In re Marriage of Thornton* (2002) 95 Cal.App.4th 251, 253–254.) Dion-Kindem's failure to call an expert to establish that sewage fell within the statutory

6

scheme was not below the standard of care. The trial court erred in refusing to take judicial notice of the relevant statutes and their application to the facts and, instead, faulting Kasem for failing to present expert testimony on the issue.

No appeal was taken from that decision, and this subsequent legal malpractice action provides no remedy for the trial court's error. Judicial error by the underlying trial court can negate the elements of a legal malpractice claim. (See *Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1584–1585.) That is the case here.

In the amended statement of decision, the court also noted Kasem "did not present evidence of any other substances or chemicals that were present in the discharge from the plumbing lines other than water and sanitary sewage. Identifying that a particular substance is a 'Hazardous Material' within the meaning of the regulatory framework set forth in Section 29A of the Sublease requires the scientific knowledge of an expert." The amended statement of decision repeatedly refers to the discharge as "sewage," and it appears there was no dispute at that trial, nor is there a dispute in this appeal, that the discharge into Little Miss Liberty's premises from the sewage line included "sewage."[2] Kasem's position in the underlying case was that under the relevant statutory law, sewage constituted a hazardous material within the meaning of section 29 of the sublease as a matter of law. The court may have been correct that proof of "other substances or chemicals" in the discharge would have required expert testimony, but such evidence would not have been necessary for Kasem to prevail based on sewage.

Kasem also alleged Dion-Kindem was negligent in "[f]ailing to retain an expert witness in commercial lease interpretation and practice in how environmental clauses in commercial leases are to be applied in a commercial lease." She again runs afoul of the limitations on expert testimony: expert opinion is generally not admissible on the legal interpretation of contracts. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1180.) She cannot state a cause of action for malpractice based on this allegation.

---

[2] The only record we have from the underlying action against Ralphs is the amended statement of decision.

7

Finally, in the reply brief, and for the first time in this litigation, appellant argues that if we accept respondents' argument that the trial court in the underlying suit erred in dismissing that action, the appellant "has a claim against Respondents for failure to advise Appellant of her appellate rights in the underlying case" and judgment should be reversed on that account, and that we should reverse with instructions that appellant be given leave to amend. This is appellant's entire argument on the point. "Obvious reasons of fairness militate against our considering this poorly developed and untimely argument," and we do not. (See *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn 10; *Series-AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 168.)

Kasem has had numerous opportunities to amend her complaint to state a cause of action for legal malpractice, but she has not alleged a relevant breach of duty by Dion-Kindem. What she has established instead is trial court error which precluded her from establishing that the sewage discharge into her premises was covered by section 29 of the sublease.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

EPSTEIN, P. J.

We concur:

MANELLA, J.                    COLLINS, J.

8

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEAN KASEM, | B246916 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC483947) |
| v. | |
| PETER R. DION-KINDEM et al., | ORDER MODIFYNG OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed in the above-entitled matter, filed on October 3, 2014,be modified as follows:

On page 4, line 3 the pronoun she is to be replaced by the company name, Little Miss Liberty.

Further, for good cause it now appears that the opinion should be certified for publication in the Official Reports and it is so ordered.

There is no change in judgment.

*EPSTEIN, P. J.     MANELLA, J.     COLLINS, J.