Brenton M. STANFIELD, Thomas P. Stone, Stone & Associates, LLP, and Jimmy Van Knighton, II, Petitioners,

v.

Jon T. NEUBAUM and Barbara Neubaum, Respondents

NO. 15–0387

Supreme Court of Texas.

Argued March 30, 2016

Opinion delivered: June 24, 2016

Sam A. Houston, Stephen R. Bailey, Scott, Clawater & Houston, LLP, Houston TX, for Petitioners.

Kristin Bays, J. Randal Bays, Bays & Bays, Conroe, TX, for Respondents.

JUSTICE GUZMAN delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE DEVINE, and JUSTICE BROWN joined.

Litigation rarely results in complete satisfaction for those involved. When a lawyer makes a mistake and the client loses the case as a result, the law affords a remedy. What happens, however, when the lawyer pursues a winning strategy (perhaps with some strategic missteps), but the trial judge errs, and the error requires a costly appeal to correct? Is the lawyer liable for the appellate costs incurred to correct the error? Although the question presents a novel issue, the answer is governed by well-established causation principles.

In this legal malpractice case, the clients do not allege their attorneys argued the wrong legal standard to the trial court or otherwise contributed to the trial court's legal error. Rather, the clients contend the court's error would have been immaterial and would not have produced an adverse judgment if the attorneys had presented additional evidence and arguments. Without conceding negligence, the attorneys argue proximate cause is lacking because, as a matter of law, judicial error constitutes a new and independent, or superseding, cause that severs any causal connection between the attorneys' alleged negligence and the costs the clients incurred to appeal.

Although we do not hold judicial error is always a superseding cause that would preclude a subsequent malpractice action, proximate-cause principles support our conclusion that judicial error can constitute a new and independent cause depending on the circumstances. Here, the trial court's adverse judgment was reversed on the basis of a judicial error that the trial attorneys did not cause and which could not reasonably be anticipated at the time. We therefore hold that, as a matter of law, any unrelated negligence by the trial attorneys was too attenuated from the remedial appellate attorney fees to be a proximate cause of those expenses.

## I. Background

The causation issue central to the disposition of this appeal originates from prior litigation in which the malpractice defendants represented the malpractice plaintiffs in a suit alleging usurious lending practices. We thus begin with a brief summary of the usury litigation that precipitated the underlying malpractice action.

### A. Usury Case

In September 2006, Buck Glove Company sued Jon and Barbara Neubaum for usury, alleging the Neubaums loaned money at usurious interest rates through their agent, Marvin March. The Neubaums hired Thomas Stone and Brenton Stanfield of Stone & Associates to represent them. The Neubaums' attorneys filed an answer, asserted counterclaims, and joined March as a responsible third party. After Buck Glove sent a usury demand letter to the Neubaums in December 2007, the Neubaums' attorneys responded with a usury cure letter and amended the Neubaums' answer to include the affirmative defense of usury cure and *bona fide* error. *See* Tex. Fin. Code §§ 305.006(c), .101, .103. Before trial, the Neubaums' attorneys filed a motion for summary judgment, asserting the usury cure letter as a bar to liability for usurious lending, but the trial court denied the motion.

Although the Neubaums' answer included the affirmative defense of *bona fide* error, along with a usury cure defense, the Neubaums' attorneys did not press either of those arguments at trial or introduce evidence to support those defenses. Instead, the Neubaums' attorneys attacked Buck Glove's case in chief, arguing March was not acting as the Neubaums' agent when he made loans to Buck Glove and the Neubaums were the victims of a Ponzi scheme operated by March and Buck Glove.[1] To establish March and Buck Glove were operating a Ponzi scheme, the Neubaums' attorneys (1) presented testimony of several witnesses and (2) introduced supporting bank records into evidence without expert testimony. *See Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 915 (Tex.App.–Beaumont 2009, pet. denied) (describing the testimony of witnesses who "invested" with March).

At the charge conference, the Neubaums' attorneys objected to an actual or apparent authority submission, arguing no evidence supported an agency claim. The trial court overruled the objection and included an agency question in the jury charge. The jury found March committed fraud against the Neubaums, but also found the Neubaums loaned money to Buck Glove through their agent, March, at usurious interest rates. In accord with the jury's verdict, the trial court rendered judgment awarding Buck Glove almost $4 million in damages and penalties and the Neubaums slightly over $150,000 on their counterclaim against Buck Glove for money had and received.

In a motion for new trial or reformation of the judgment, the Neubaums' attorneys assailed the judgment on several grounds, including (1) the jury's finding that March committed fraud against the Neubaums necessarily precluded the jury's finding that the Neubaums were guilty of usury because the usury claim was predicated solely on an agency theory, (2) the evidence was legally insufficient to support the jury's liability finding on usury, (3) no evidence supported the apparent authority

---

1. "Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *In re Bonham*, 229 F.3d 750, 759 n. 1 (9th Cir.2000).

instruction in the jury charge, and (4) the usury cure letter precluded liability as a matter of law. The motion was denied.

The Neubaums hired new counsel to appeal the adverse usury judgment. The appeal was successful. The appellate court reversed the usury judgment based on legally insufficient evidence that March made loans to Buck Glove as the Neubaums' agent, an essential element of the usury claim. *See id.* at 920. Buck Glove filed a petition for review, which was denied. When all is said and done, the Neubaums recovered over $150,000 on their counterclaim against Buck Glove but incurred over $140,000 of appellate attorney's fees to obtain a favorable resolution of the usury case.

## B. The Malpractice Suit

Despite ultimately prevailing in the usury case, the Neubaums sued their trial attorneys, Brenton Stanfield, Thomas Stone, Stone & Associates, LLP, and Jimmy Van Knighton, II (collectively, the Attorneys), for legal malpractice.[2] The Neubaums claim the Attorneys' negligent representation in the trial court proceedings resulted in an adverse judgment that necessitated a remedial appeal and caused them to incur unnecessary or enhanced appellate attorney's fees and costs. The asserted negligence includes: (1) failing to present evidence of the usury cure letter to the jury and not requesting a jury question regarding usury cure; (2) failing to present evidence of *bona fide* error and not requesting a jury question regarding that defense; and (3) failing to designate an expert to explain how the bank records admitted at trial revealed a Ponzi scheme. The Neubaums do not contend the Attorneys failed to properly present or argue

the agency defense or otherwise contributed to the trial court's failure to make a proper ruling on that issue. Rather, the Neubaums argue the trial court's error would have been immaterial and a favorable judgment would have been rendered absent the Attorneys' malpractice in other regards. The Neubaums conclude the Attorneys' negligence proximately caused them to incur additional expenses to overturn the erroneous trial court judgment.

Challenging the causation and damages elements of the Neubaums' malpractice claims, the Attorneys filed a traditional motion for summary judgment, arguing the court of appeals' ruling vindicated their trial strategy and conclusively established the Neubaums would have obtained a favorable judgment on the usury claim based on the case the Attorneys presented if the trial court had not erred. As the Attorneys noted, they properly preserved the agency issue in the trial court, which enabled the appellate court to correct the error, and the Neubaums ultimately prevailed. Without admitting any malpractice occurred, the Attorneys maintained the trial court's error was the sole cause of the Neubaums' injury because the Attorneys pursued a winning strategy and did not contribute to the judicial error. The trial court agreed and granted summary judgment in the Attorneys' favor.

The Neubaums appealed, and a divided court of appeals reversed and remanded in part. 465 S.W.3d 266, 268 (Tex.App.–Houston [14th Dist.] 2015) (affirming summary judgment only as to breach-of-fiduciary duty claims that were not subsequently appealed). The court held the Attorneys' summary-judgment evidence failed to "conclusively prove that (1) if a

---

**2.** The Neubaums allege that Van Knighton, a partner at Stone & Associates, negligently supervised Stanfield.

reasonably prudent attorney had represented the Neubaums in the Usury Lawsuit, the Neubaums would not have obtained a more favorable result than the result they actually obtained; or (2) the [a]lleged [d]amages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence." *Id.* at 274. Reasoning that expert testimony was necessary to prove the Attorneys' negligence did not proximately cause the Neubaums' harm, the court of appeals concluded the Attorneys' failure to produce expert testimony was fatal to their summary-judgment motion. *Id.* at 275–76. The court of appeals declined to consider whether judicial error can constitute a superseding cause that breaks the causal chain and, as a matter of law, negates proximate cause. *See id.* at 277 n. 14.

The dissenting justice addressed the judicial-error issue and, based on undisputed facts, concluded the summary-judgment evidence conclusively established judicial error was a new and independent cause of the Neubaums' alleged harm. *Id.* at 277 (Brown, J., dissenting). In so concluding, the dissenting justice noted the trial court's error was unforeseeable because the Attorneys' negligence did not cause or contribute to the judicial error and, in fact, the alleged acts of negligence were wholly unrelated to the trial court's error. *Id.* at

279. The dissent further concluded expert testimony was not required because the logical chain of causation was not beyond a juror's understanding—(1) the Attorneys argued lack of evidence regarding agency; (2) the usury trial court rejected those arguments and entered an adverse judgment; and (3) the court of appeals reversed the adverse judgment on that basis. *Id.* at 280.

The dispositive issues in the instant appeal are: (1) whether judicial error constitutes a superseding cause of the Neubaums' injuries in the absence of evidence the Attorneys contributed to the error and (2) whether expert testimony is necessary to conclusively establish a lack of causation in these circumstances.

## II. Discussion

 To prevail on a legal malpractice claim, "the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex.2009).[3] A defendant may obtain summary judgment by negating one of these elements or conclusively proving all of the elements of an affirmative defense. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); TEX. R. CIV. P. 166a(b), (c).

**3.** Usually, "[w]hen a legal malpractice case arises from prior litigation, the plaintiff has the burden to prove that, 'but for' the attorney's breach of duty, he or she would have prevailed on the underlying cause of action and would have been entitled to judgment." *See Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex.App.–Houston [1st Dist.] 1998, pet. denied). The Neubaums cannot satisfy this "suit within a suit" requirement because they did prevail in the underlying action on appeal. *See id.* at 173 ("This aspect of the plaintiff's burden is commonly referred to as the 'suit within a suit' requirement."). The

Neubaums therefore assert a more novel theory—that an attorney has the duty to present all potentially successful arguments in the trial court. The Neubaums allege breach of that duty in the usury case proximately caused rendition of an adverse judgment and they incurred unnecessary or enhanced attorney's fees to obtain the correct judgment. Because the Attorneys have not challenged the duty or breach elements of the Neubaums' malpractice claim, we do not address the validity of the Neubaums' unconventional approach to these elements.

If the defendant produces evidence demonstrating summary judgment is proper, "the burden shifts to the plaintiff to present evidence creating a fact issue." *Walker*, 924 S.W.2d at 377. In evaluating whether a fact issue precludes summary judgment, we take "all evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovant's favor." *Id.*

Relying on undisputed facts, the Attorneys argue judicial error was a new and independent cause of the Neubaums' damages, superseding the Attorneys' alleged negligence and negating proximate cause as a matter of law.[4] Because we have not addressed whether judicial error can constitute a new and independent cause,[5] we turn to established negligence and proximate-cause principles for guidance. *See Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex.1996) ("In Texas, however, a legal malpractice action sounds in tort and is governed by negligence principles.").

## A. Proximate Cause Principles

 Breach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable. *See Akin*, 299 S.W.3d at 122. Cause in fact requires "proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ('but for' the act or omission), the

harm would not have occurred." *Id.* If a negligent act or omission "merely creat[es] the condition that makes the harm possible," it is not a substantial factor in causing the harm as a matter of law. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 800 (Tex. 2004). A plaintiff proves foreseeability of the injury by establishing that "a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Conjecture, guess, and speculation are insufficient to prove cause in fact and foreseeability. *See Akin*, 299 S.W.3d at 122.

 Although there can be more than one proximate cause of an injury, *see Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992), a new and independent, or superseding, cause may "intervene[ ]' between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause," *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex.2006) (plurality op.). A new and independent cause thus destroys any causal connection between the defendant's negligence and the plaintiff's harm, precluding the plaintiff from establishing the defendant's negligence as a proximate cause.[6] *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex.

---

**4.** The Attorneys also argue the appellate court's reversal of the usury judgment conclusively negates the Neubaums' causation element by precluding them from satisfying the "suit within a suit" requirement. But this argument fails to recognize the Neubaums' characterization of the duty, breach, and harm suffered as necessitating the appeal in the first instance.

**5.** One Texas appellate court has "assume[d], without deciding, that Texas courts would recognize the sole cause defense of judicial

error in a legal malpractice suit." *See Vitale v. Keim*, No. 01–95–00401–CV, 1997 WL 549186, at *6 (Tex.App.–Houston [1st Dist.] Aug. 29, 1997, pet. denied) (not designated for publication).

**6.** New and independent cause is not an affirmative defense; rather, "it is but an element to be considered by the jury in determining the existence or non-existence of proximate cause." *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 383 (1952).

2009) (explaining how a new and independent cause "destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question"); *Dew*, 208 S.W.3d at 450 (same). In contrast, a concurring cause "concurs with the continuing and co-operating original negligence in working the injury," leaving the causal connection between the defendant's negligence and the plaintiff's harm intact. *See Gulf, C. & S.F. Ry. Co. v. Ballew*, 66 S.W.2d 659, 661 (Tex.Comm'n App.1933, holding approved). Thus, the crucial distinction between a superseding cause and a concurring cause is the intervening cause's effect on the chain of causation. In evaluating the existence of a superseding cause, "[t]he question always is, was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?" *Tex. & P. Ry. Co. v. Bigham*, 90 Tex. 223, 38 S.W. 162, 164 (1896) (quoting *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 475, 24 L.Ed. 256 (1876)).

In assessing whether an intervening cause disrupted the causal connection between the defendant's negligence and the plaintiff's harm and constitutes a new and independent cause, we consider a variety of factors, including foreseeability. If the intervening cause and its probable consequences are a *reasonably* foreseeable result of the defendant's negligence, the intervening cause "is a concurring cause as opposed to a superseding or new and independent cause." *Hawley*, 284 S.W.3d at 857.[7] But if "nothing short of prophetic ken could have anticipated the happening of the combination of events" by which the original negligence led to an intervening force that resulted in the plaintiff's injury, the harm is not reasonably foreseeable. *See Bigham*, 38 S.W. at 164. Foreseeability is a highly fact-specific inquiry that must be determined "in the light of the attending circumstances," not in the abstract. *See id.* (quoting *Kellogg*, 94 U.S. at 475).[8]

Other factors we consider are whether the original negligence caused the

**7.** *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992) ("Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence."); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex.1985) (criminal conduct is not a superseding cause "where the criminal conduct is a foreseeable result of such negligence"); *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968) (considering "whether the intervening cause and its probable consequences were such as could reasonably have been anticipated by the original wrongdoer"); J. Hadley Edgar, Jr. & James B. Sales, 1 *Texas Torts and Remedies* § 1.04[4][d], at 1–61 (2015) ("A third party's criminal or intentional tortious conduct will not operate as a superseding cause to relieve the defendant of liability if the third party's conduct is a foreseeable result of the defendant's negligence.").

**8.** *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex.1999) (explaining the rape of the plaintiff "simply was not foreseeable, beyond a remote philosophic sense" because the plaintiff "was not so situated that injury to her might reasonably have been foreseen" despite the evidence that it was foreseeable that violent crimes would occur in the parking garage due to the defendant's failure to secure it); *see also Hawley*, 284 S.W.3d at 857 (looking to the Restatement factors for guidance); *Dew*, 208 S.W.3d at 452 (considering relevant Restatement factors); Restatement (Second) of Torts § 442(b) (1965) (including whether the consequences appear "after the event to be extraordinary rather than normal in view of the circumstances existing at the time of [the intervening force's] operation" as a factor to consider).

intervening force to occur and whether the negligence operated with the intervening force in creating the harm. *See Hawley*, 284 S.W.3d at 857 (explaining a new and independent cause operates independently of the original negligence); RESTATEMENT (SECOND) OF TORTS § 442(d) (1965) (including whether the intervening force is caused by a third party as a factor to consider). In *Dew*, for example, the original negligence enabled the intervening force to occur and contributed to the resulting harm. 208 S.W.3d at 453. In that case, the defendant negligently safeguarded an opening in a raised platform with a rope, which created a reasonably foreseeable risk that a worker would fall. *Id.* at 452–53. A third party's subsequent action of removing an unsafe, easily removed rope barricade merely "exploited this inadequacy" and increased the risk of a dangerous fall at that specific location; it "did not fundamentally alter the foreseeable consequences of [the] original negligence." *Id.* at 453. Consequently, a third party's removal of the defendant's deficient safeguard was a concurring, rather than superseding, cause. *Id.* Similarly, in *Hawley*, the defendant hospital negligently failed to comply with its policy regarding notifying physicians of a cancer diagnosis, and the physicians negligently failed to follow-up on and review the pathology report that included the cancer diagnosis. *See* 284 S.W.3d at 855. We held the hospital's negligence concurred with the physicians' negligence to cause the patient's cancer to go untreated. *See id.* at 858–59. Accordingly, the physicians' negligence was a concurring, rather than superseding, cause.

But if the original negligence in *Dew* and *Hawley* had merely created the condition that enabled the injury to occur, the intervening cause might have been a superseding, or new and independent, cause. An intervening cause can destroy the causal connection between the original negligence and the harm, even if the original negligence is the "but for" cause of the intervening cause. *See Bell v. Campbell*, 434 S.W.2d 117, 120–22 (Tex. 1968) (the second collision was a new and independent cause even though the original negligence "created the condition that made the second collision possible"). An intervening cause supersedes the original negligence when it "alters the natural sequence of events," causes injuries that would not otherwise have occurred, was not brought into operation by the original wrongful acts of the defendant, and operates entirely independently of the defendant's negligent act or omission. *Hawley*, 284 S.W.3d at 857.

## B. When Judicial Error Constitutes a Superseding or New and Independent Cause

When a judicial error intervenes between an attorney's negligence and the plaintiff's injury, the error can constitute a new and independent cause that relieves the attorney of liability. To break the causal connection between an attorney's negligence and the plaintiff's harm, the judicial error must not be reasonably foreseeable. *See Bell*, 434 S.W.2d at 120. Theoretically, it is always foreseeable that a judge might err in some manner; however, it is not typically foreseeable on what issues a judge will err and on what issues a judge will rule correctly.[9]

9. In the abstract, "it is always foreseeable that a trial court will err, as evidenced by the existence of appellate courts." *Lombardo v. Huysentruyt*, 91 Cal.App.4th 656, 110 Cal. Rptr.2d 691, 700 (2001). Similarly, it is always foreseeable that a crime will be committed, as evidenced by the existence of a police force. Nonetheless, we have repeatedly recognized that "the criminal conduct of a third party may be a superseding cause which re-

Cf. Simko v. Blake, 201 Mich.App. 191, 506 N.W.2d 258, 259 (1993) (explaining there is "no level of skill, nor degree of perfection that could anticipate every error or completely shield a client from the occasional aberrant ruling of a fallible judge or an intransigent jury"), aff'd, 448 Mich. 648, 532 N.W.2d 842 (1995). But if the judicial error alleged to have been a new and independent cause is reasonably foreseeable at the time of the defendant's alleged negligence, the error is a concurring cause as opposed to a new and independent, or superseding, cause. Cf. Hawley, 284 S.W.3d at 857.

 The question then is not whether judicial error is generally foreseeable, but whether the trial court's error is a reasonably foreseeable *result* of the attorney's negligence in light of *all existing circumstances.*[10] A judicial error is a reasonably foreseeable result of an attorney's negligence if "an unbroken connection" exists between the attorney's negligence and the judicial error, such as when the attorney's negligence directly contributed to and cooperated with the judicial error, rendering the error part of "a continuous succession of events" that foreseeably relieves the negligent actor from liability." *Travis,* 830 S.W.2d at 98.

10. *See Travis,* 830 S.W.2d at 98 ("is a foreseeable result of such negligence"); *Tex. & P. Ry. Co. v. Bigham,* 90 Tex. 223, 38 S.W. 162, 164 (1896) ("in the light of the attending circumstances" (quoting *Milwaukee & St. Paul Ry. Co. v. Kellogg,* 94 U.S. 469, 475, 24 L.Ed. 256 (1876))); J. Hadley Edgar, Jr. & James B. Sales, 1 *Texas Torts and Remedies* § 1.04[4][d], at 1–61 (2015) ("if the third party's conduct is a foreseeable result of the defendant's negligence"); *see also Mellon Mortg.,* 5 S.W.3d at 657 (concluding a specific crime was not a foreseeable result of the defendant's failure to secure a parking garage despite evidence of violent crimes generally).

sulted in the harm. *See Bigham,* 38 S.W. at 164.

 However, merely furnishing a condition that allows judicial error to occur does not establish the ensuing harm was a reasonably foreseeable result of the defendant's negligence. *See Bell,* 434 S.W.2d at 120–21 (explaining the defendants' negligence "created the condition that made the second collision possible," but concluding the defendants "could not reasonably foresee" the injuries or death caused by the second collision). If an attorney does not contribute to the judicial error itself and the judicial error is not otherwise reasonably foreseeable in the particular circumstances of the case, the error is a new and independent cause of the plaintiff's injury if it "alters the natural sequence of events" and "produces results that would not otherwise have occurred." *See Hawley,* 284 S.W.3d at 857.

Courts in other jurisdictions have similarly acknowledged that judicial error can constitute a new and independent cause that can relieve an attorney from liability for alleged malpractice, as long as the attorney did not contribute to the error and the error was not otherwise foreseeable.[11] *See Kasem v. Dion–Kindem,* 230

11. In comparison, one court recently held that a judicial error was a superseding cause of a malpractice plaintiff's harm "without regard to whether the court's error was foreseeable." *Kiribati Seafood Co. v. Dechert LLP,* No. 1384CV02393–BLS2, 2016 WL 1426297, at *12 (Mass.Super. Apr. 7, 2016). Relying on the Restatement (Second) of Torts § 452(2), comment d, the court reasoned that foreseeability of judicial error is immaterial because "an appellate court has a duty to apply the law correctly"; consequently, "judicial error resulting in an adverse ruling is a superseding cause that relieves a negligent attorney from liability for legal malpractice." *Id.* at *11; *see also* Restatement (Second) of Torts § 452(2), cmt. d (1965) ("Subsection (2) covers the exceptional cases in which, because the duty, and hence the entire responsibility

Cal.App.4th 1395, 179 Cal.Rptr.3d 711, 716 (2014) (recognizing that "[j]udicial error by the underlying trial court can negate the elements of a legal malpractice claim"); *Crestwood Cove Apartments Bus. Tr. v. Turner*, 164 P.3d 1247, 1255 (Utah 2007) (agreeing "that a plaintiff cannot establish a claim for legal malpractice where judicial error was the proximate cause of the adverse result"); *Skinner v. Stone, Raskin & Israel*, 724 F.2d 264, 266 (2d Cir.1983) (acknowledging a trial-court error can be a superseding cause); *compare Huang v. Brenson*, 379 Ill.Dec. 891, 7 N.E.3d 729, 737–38 (Ill.App.Ct.2014) (concluding judicial error acted as a superseding cause, rather than a concurring proximate cause, when there were no allegations the attorney contributed to the error, the attorney preserved the error, and the attorney was "vindicated on appeal") *with Lombardo v. Huysentruyt*, 91 Cal.App.4th 656, 110 Cal. Rptr.2d 691, 702 (2001) (explaining evidence existed that the probate court's erroneous order was clearly foreseeable because the court enforced an ambiguous conservatorship order according to "its harshest–but most literal–interpretation"), *and Skinner*, 724 F.2d at 265–66 (reversing summary judgment for attorneys when evidence existed the attorneys knew the trial court was about to erroneously enter a default judgment and the attorneys' failure to take preemptive measures contributed to the error). For example, the Utah Supreme Court has held that, when an attorney raises and preserves all necessary arguments to win a case for a client and a court nevertheless renders an erroneous adverse ruling, "the attorney's actions cannot be considered the proximate cause of the client's loss." *Crestwood Cove*, 164 P.3d at 1255. The court reasoned that, if clients could subject attorneys to malpractice liability based on judicial error and clients' beliefs that the attorneys could have litigated the case more effectively, "an attorney would be subject to liability every time a judge erroneously ruled against the attorney's client." *Id.* at 1255–56. The court refused to adopt a view of proximate cause that would render attorneys responsible for all judicial error, but recognized that a plaintiff could raise a fact question regarding causation by presenting evidence that the attorneys' negligence was a substantial factor that contributed to the error. *Id.* at 1256. Because the plaintiff failed to create a fact issue on that point, the Utah court concluded the judicial error was the sole proximate cause of the plaintiff's injury. *Id.* at 1258.

---

for the situation, has been shifted to a third person, the original actor is relieved of liability for the result which follows from the operation of his own negligence. The shifted responsibility means in effect that the duty, or obligation, of the original actor in the matter has terminated, and has been replaced by that of the third person.").

Other courts have found no breach of duty as a matter of law or invoked the abandonment doctrine to relieve attorneys of liability when a malpractice plaintiff's injuries were directly caused by a judicial error. *See Cedeno v. Gumbiner*, 347 Ill.App.3d 169, 282 Ill. Dec. 600, 806 N.E.2d 1188, 1194 (2004) ("Where [the plaintiff's] claim remained actionable after defendants' discharge, and the circuit court's misapplication of the law served as an intervening cause, it cannot be said that plaintiff's damages proximately resulted from defendants' [negligence]."); *Simko v. Blake*, 448 Mich. 648, 532 N.W.2d 842, 847 (1995) (refusing to require an attorney "to predict infallibly how a court will rule"); *Penn. Ins. Guar. Ass'n v. Sikes*, 590 So.2d 1051, 1053 (Fla.Dist.Ct.App.1991) (holding "the settlement of the underlying personal injury case, while the appeal was pending, constituted an abandonment of any claim that [the plaintiff's] loss resulted from legal malpractice rather than judicial error"). *But see Temple Hoyne Buell Found. v. Holland & Hart*, 851 P.2d 192, 198 (Colo.App.1992) (disagreeing that the attorneys did not breach their duty as a matter of law by drafting a valid and enforceable option contract that a trial court erroneously concluded was invalid).

## C. Analysis

■ Without dispute, the adverse usury judgment, which required the Neubaums to incur appellate litigation costs to correct, resulted from the trial court's error of law regarding March's agency authority. The Neubaums do not allege the Attorneys negligently presented, argued, or failed to preserve the issue, nor do they allege the Attorneys otherwise contributed to the trial court's error. On the basis of these undisputed facts, the Attorneys argue the judicial error is a new and independent cause of the Neubaums' harm as a matter of law, entitling them to summary judgment.

■ The Neubaums take the position that judicial error can never be a superseding cause and, in any event, the trial court's error in this case was immaterial. The Neubaums argue a material fact issue exists regarding proximate cause because the summary-judgment record bears evidence of negligent trial decisions that might have circumvented the adverse judgment. In other words, the Neubaums contend the Attorneys may have provided a belt, but they were nevertheless harmed by the Attorneys' failure to employ suspenders. Even assuming the Attorneys breached a duty, however, the separate inquires of breach and causation cannot be conflated, "and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other." *Alexander v. Turtur & Assocs., Inc.,* 146 S.W.3d 113, 119 (Tex.2004). Even if the Neubaums could produce non-speculative evidence that the erroneous adverse usury judgment would not have occurred in the absence of the Attorneys' negligence, the Neubaums would have only raised a fact question regarding "but for" causation— whether the Attorneys' negligence created a condition that made the harm possible; the Neubaums would not have established that "the negligent act or omission was a substantial factor in bringing about the harm at issue." [12] *See Akin,* 299 S.W.3d at 122 (stating the cause-in-fact element of proximate cause requires proof that negligence was a "substantial factor" and "but for" cause); *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 800 ("Our precedents establish that merely creating the condition that makes harm possible falls short as a matter of law of satisfying the substantial factor test.").

In any event, whatever evidence the Neubaums produced regarding "but for" causation and the Attorneys' negligence, they produced no evidence that the judicial error was reasonably foreseeable to preclude it from being a superseding cause. Consequently, if the judicial error rises to the level of a new and independent cause, the Attorneys have negated the Neubaums' proximate cause element and are entitled to summary judgment. *See Phan Son Van v. Peña,* 990 S.W.2d 751, 754 (Tex.1999) (explaining that once a defendant presents evidence of a superseding cause, "[t]he burden then shifts to the plaintiff to raise a fact issue by presenting controverting evidence" that the intervening conduct was foreseeable); *Walker,* 924

---

12. The concurrence suggests the Neubaums failed to prove causation because the appeal and resulting appellate costs might have been necessary regardless of the trial court's initial judgment. *See post* at 3 (HECHT, J., concurring) ("Had the trial court rendered judgment for the Neubaums, Buck Glove could have appealed, just as it did to this Court from the court of appeals' adverse ruling."). However, as nonmovants on a traditional motion for summary judgment, the Neubaums do not bear the burden of proving causation–the Attorneys have the burden of negating causation. Accordingly, whether the judicial error constituted a new and independent cause of the Neubaums' appellate litigation costs is the dispositive issue on appeal.

S.W.2d. at 377 ("After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue.").

Under the circumstances in this case, the judicial error was a superseding cause of the adverse judgment and the Neubaums' resulting appellate litigation costs. The judicial error was not a reasonably foreseeable result of the Attorneys' negligence in view of all the undisputed facts at the time it occurred. Though the Neubaums invite us to focus exclusively on the Attorneys' negligent acts and omissions, the foreseeability analysis requires looking at all the circumstances in existence "at the time." *See Hawley,* 284 S.W.3d at 857; *Bigham,* 38 S.W. at 164 ("whether a reasonably prudent man, *in view of all the facts,* would have anticipated the result" (emphasis added)). At the time the Attorneys made the strategic decisions that are challenged in the malpractice action, the record establishes the Attorneys were neither negligent nor incorrect in arguing there was no evidence of agency, and the trial court erred in ruling adversely in that regard. Accordingly, the Attorneys presented evidence that the judicial error was not reasonably foreseeable because they did not contribute to the error. *Cf. Skinner,* 724 F.2d at 265–66 (reversing summary judgment for attorneys when evidence existed that the attorneys contributed to the error). The Neubaums failed to raise a fact issue that the error was foreseeable. *See Phan Son Van,* 990 S.W.2d at 754; *Walker,* 924 S.W.2d at 377.

Moreover, the appellate court's reversal of the adverse usury judgment conclusively establishes that, taking all the Attorneys' negligent and non-negligent acts, omissions, and strategic decisions together, no adverse judgment would have occurred if judicial error had not intervened.[13] The trial court's error thus "alter[ed] the natural sequence of events" and "produce[d] results that would not otherwise have occurred." *See Hawley,* 284 S.W.3d at 857. The Attorneys' negligence may have "created a condition" that allowed the Neubaums' injury to occur, but it "did not actively contribute in any way to the injuries involved in this suit." *See Bell,* 434 S.W.2d at 120–22; *see also IHS Cedars Treatment Ctr.,* 143 S.W.3d at 799 ("Where the initial act of negligence ... merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries."). The court's error was related to the no-evidence point the Attorneys non-negligently presented, preserved, and argued, and was unrelated to the negligent acts and omissions the Neubaums allege. Accordingly, the judicial error was wholly unrelated to and operated independently of the Attorneys' alleged negligence. *Cf. Hawley,* 284 S.W.3d at 857–59 (finding conclusive evidence that "it was reasonably foreseeable to the hospital that some physicians might be unaware, and remain unaware, of a cancer diagnosis unless [the hospital] ensured the physicians were aware of it," despite doctors' independent duty to follow-up on pathology reports); *Dew,* 208 S.W.3d at 453 (removal of the defendant's inadequate safeguard contributed to, rather than superseded, the defendant's negligence in installing a rope around a platform opening rather than a proper barricade).

13. As in *Huang,* the appellate court's reversal also confirmed that the Attorneys employed a meritorious trial strategy and effectively preserved the error. *See Huang v. Brenson,* 379 Ill.Dec. 891, 7 N.E.3d 729, 737 (Ill.App.Ct. 2014).

As a matter of law, the trial court's error of law on the agency issue was a new and independent cause of the adverse usury judgment and the ensuing appellate litigation costs. Because the trial court's legal error constituted a superseding cause as a matter of law, no expert testimony is necessary for the Attorneys to negate causation. *See Bell*, 434 S.W.2d at 122 (holding as a matter of law that injuries were caused by a new and intervening agency); *see also Phan Son Van*, 990 S.W.2d at 756 (concluding criminal acts were a superseding cause as a matter of law).

### III. Conclusion

Clients have a right to demand and receive competent representation, and attorneys should be liable when their incompetence prevents vindication of their clients' rights; however, attorneys cannot guarantee a perfectly functioning judiciary or an error-free trial. Attorneys should be responsible for harm they actually cause—not harm caused by judicial error. Because the unfavorable usury judgment was reversed on the basis of a trial-court error and the record bears no evidence the Attorneys contributed to the error or that the error was reasonably foreseeable under the circumstances, any unrelated negligence of the Attorneys, as alleged, is not the proximate cause of the Neubaums' appellate litigation costs as a matter of law. We therefore reverse the court of appeals' judgment as to the Neubaums' malpractice claims and render judgment in the Attorneys' favor.

CHIEF JUSTICE HECHT delivered a concurring opinion.

CHIEF JUSTICE HECHT, concurring.

I agree with the Court that the adverse judgment the Neubaums suffered in the trial court on Buck Glove's usury claim was not caused by any negligence of their Attorneys, but not because the trial court's error was a new and independent cause. The effect of judicial error on attorney error is a difficult issue, as the Court recognizes, and in my view, one that is easily avoided in the case. Accordingly, I concur in the judgment only.

The Neubaums owned a retail shopping center in which Buddy March and Buck Glove Co. were tenants. March did custom embroidery. Buck Glove, as its name suggests, sold gloves. The Neubaums advanced money to March to purchase raw materials to supply orders to his customers and shared in his profits. The Neubaums considered themselves investors in March's business. March and Buck Glove, one of his customers, began operating their businesses jointly, and they used the Neubaums' advances in the joint operation. When those advances had grown to some $800,000 more than March had paid the Neubaums, March had Buck Glove sign a note to the Neubaums for that amount. Buck Glove then sued the Neubaums for usury. The Neubaums discovered that March and Buck Glove had had the same arrangement with other "investors" and were using new advances not to supply customers, but to repay old advances. The Neubaums counterclaimed for fraud, alleging that March and Buck Glove were engaged in a Ponzi scheme. A jury found that March had defrauded the Neubaums but failed to find that Buck Glove had participated in the fraud. The jury also found that March was the Neubaums' agent in "loaning" advances for Buck Glove's orders and that the share of profits was usurious. The trial court rendered judgment on the verdict against the Neubaums, awarding Buck Glove about $4 million in damages. The court of appeals reversed and rendered, holding that there

was no evidence that March was the Neubaums' agent.[1]

The Neubaums then brought this action against their Attorneys for malpractice, claiming that their negligence in the trial of the usury case caused the adverse trial court judgment and the resulting costs of appeal. The Neubaums allege that the Attorneys were negligent in failing to offer evidence of two usury defenses and failing to effectively present records showing that March and Buck Glove had engaged in a Ponzi scheme.

In defense of the usury claim, the Neubaums asserted that any usurious charge was an accidental and bona fide error for which they were not liable under Section 305.101 of the Finance Code, and in any event had been corrected by their "cure letter" under Section 305.103 of the Code. Both defenses were questions of law for the court,[2] and thus a presentation of evidence to the jury was unnecessary and improper. The cure letter was an absolute defense to the usury claim, and the Attorneys moved for summary judgment on it. The trial court incorrectly denied the motion.

Whether March and Buck Glove engaged in a Ponzi scheme was completely unrelated to whether the Neubaums committed usury. Even if the Attorneys'

presentation of the evidence was not as effective as it should have been (it did convince the jury that March engaged in fraud), that could not have contributed to the jury's finding that March made a usurious loan to Buck Glove as the Neubaums' agent.

Moreover, the Attorneys' alleged negligence did not cause the appeal. Had the trial court rendered judgment for the Neubaums, Buck Glove could have appealed, just as it did to this Court from the court of appeals' adverse ruling.

The Neubaums suffered an adverse judgment on Buck Glove's usury claim because the trial court erred in denying summary judgment on their cure letter defense and in holding that there was evidence to support the jury's finding that March was their agent. The Attorneys did nothing to contribute to those errors; to the contrary, they vigorously argued against them. The Court indicates that that fact is enough to show that the Attorneys' negligence did not cause the adverse judgment.[3] I disagree. An attorney's negligence might cause an adverse judgment even if it did not contribute to the judicial error. Here, however, any negligence by the Attorneys as alleged by the Neubaums could not have caused the adverse judgment.

1. *Neubaum v. Buck Glove Co.,* 302 S.W.3d 912, 919–920 (Tex.App.–Beaumont 2009, pet. denied).

2. *See* Tex. Fin. Code § 305.101 ("A creditor is not subject to penalty under this chapter for any usurious interest that results from an accidental and bona fide error."); *id.* § 305.103("(a) A creditor is not liable to an obligor for a violation of this subtitle if: (1) not later than the 60th day after the date the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and mak-

ing any necessary adjustment, including the payment of interest on a refund, if any, at the applicable rate provided for in the contract of the parties; and (2) the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation").

3. *Ante* at 100 ("The question then is not whether judicial error is generally foreseeable, but whether the trial court's error is a reasonably foreseeable *result* of the attorney's negligence in light *of all existing circumstances.*").

Accordingly, I concur only in the judgment.