See also 422 S.W.3d 909 and 476 S.W.3d 557.

**IMMOBILIERE JEUNESS ESTABLISSEMENT,**
Appellant

v.

**AMEGY BANK NATIONAL ASSOCIATION and Steven J. Pritchard, Appellees**

NO. 14-16-00457-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 20, 2017

Lance Christopher Kassab, David Eric Kassab, Houston, TX, for Appellant.

Ruth Ann Brenton, Fred Wahrlich, Houston, TX, R. Michael Casseb, San Antonio, TX, for Appellees.

Panel consists of Justices Boyce, Jamison, and Brown.

## OPINION

Martha Hill Jamison, Justice

Appellant Immobiliere Jeuness Establissement brought this derivative lawsuit on behalf of two limited partnerships against appellees Amegy Bank and Steven Pritchard for tortious interference with the partnership agreements, as well as aiding and abetting and civil conspiracy to com-

mit fraud and a breach of fiduciary duty. In two issues, IJE challenges the trial court's granting of appellees' traditional motions for summary judgment on both statute of limitations and substantive grounds. In a cross-appeal, appellees contend the trial court erred in failing to rule on their motion for expenses. We affirm.

### Background

IJE was a limited partner in 29 Kuykendahl Road Ltd., which was in turn a limited partner in 9.2 Louetta Road Ltd. Between them, the two partnerships owned two tracts of land in Harris County, Texas that were ultimately developed into a multi-family affordable housing project known as Villages at Louetta Apartments (the "Project"). Radnor Joint Venture, Inc. was the general partner of both partnerships. In 2001 and 2002, Radnor obtained two loans from InterContinental National Bank ("ICNB"), totaling $1.4 million, using the two partnership tracts as collateral. Amegy later succeeded to the interests of ICNB. Pritchard was president of ICNB at the time of the loans and was involved in the approval process.

The proceeds of the loans were allegedly used to enhance the balance sheet of FAS Construction Management, Inc., a company owned by Radnor's president, Michael Beucler, that is unrelated to either of the two partnerships. In November 2003, the loans were refinanced with Texas Capital Bank ("TCB"). The ICNB liens on the tracts were released at that time and liens favoring TCB took their place. In January 2004, Radnor obtained a $2.808 million construction loan for the Project from KeyBank, N.A. and used the proceeds to, among other things, pay off the TCB loan. Again, the TCB liens were released and replaced by liens for KeyBank. The primary purpose of the construction loan was purportedly the development of the two tracts owned by the partnerships.

According to IJE, the two tracts were subsequently transferred from the partnerships to Villages at Louetta Apartments, Ltd., a limited partnership created to develop the Project, and American Opportunity for Housing, a nonprofit corporation involved to obtain tax exemptions. IJE states that the partnerships originally received a $1.8 million note in exchange for the tracts, but this note was apparently later relinquished for an unsecured interest in Villages. According to IJE's pleadings in the present case, partnership assets were ultimately used to repay the KeyBank construction loan, even though approximately $1.4 million of that loan could be traced back to the original loan proceeds used to enhance FAS's balance sheet.

In 2004, IJE hired attorney Howard Cordray to look into the transactions involving the tracts. In response to Cordray's inquiries, lawyers for Radnor represented that the loan proceeds supplied to FAS (using the partnership tracts as collateral) were for a partnership purpose, namely, development of a viable plan for an affordable housing project. Radnor and its lawyers, however, apparently refused to allow Cordray or IJE to see any documentation supporting this claim. In February 2009, IJE sued Radnor, the partnerships, and Villages, seeking to obtain records, including loan documents, indicating whether the loans obtained using the tracts as collateral were for legitimate partnership purposes. IJE later added Beucler and FAS as defendants and alleged Radnor and Beucler may have committed fraud and breached their fiduciary duties. In July 2010, the trial court ordered Radnor to produce the requested documents, and when Radnor failed to do so, IJE subpoenaed the loan records from

Amegy. In December 2010, Amegy produced documents which IJE contends revealed that the loan proceeds were used for a non-partnership purpose and that ICNB and Pritchard were aware of this fact at the time the loans were made. Beucler later acknowledged in his deposition the non-partnership use of the proceeds.

Radnor and Beucler agreed to settle the 2009 lawsuit by paying IJE and the partnerships $1.5 million. IJE then brought the present derivative action on behalf of the partnerships against Amegy, Pritchard, and the lawyers that had represented Radnor. After the claims against Amegy and Pritchard were severed from those against the lawyers, the lawyers settled for $442,500. IJE's claims against Amegy and Pritchard are based on the allegation that at the time of the loans, they were aware Radnor was using the two partnership tracts as collateral for non-partnership purposes in violation of the partnership agreements and, thereby, appellees tortiously interfered with the partnership agreements, aided and abetted Radnor's fraud and breach of fiduciary duty, and engaged in a civil conspiracy to commit fraud and a breach of fiduciary duty. As stated above, the trial court granted traditional summary judgment for appellees on both statute of limitations and substantive grounds. It is from this ruling that IJE appeals. The parties also dispute whether the trial court considered the merits of appellees' motion for expenses under Texas Business and Organizations Code section 153.404.

## I. Summary Judgment

In its second issue, IJE contends the trial court erred in granting summary judgment favoring appellees on substantive grounds on each of IJE's claims for tortious interference, conspiracy, and aiding and abetting. We will begin by addressing the summary judgment on the tortious interference and conspiracy causes of action and then will turn to a discussion regarding the aiding and abetting cause of action.[1]

■■■■ We review a trial court's grant of summary judgment de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, such as was granted here, the movant has the burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166a(c)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if any of the independent summary judgment

---

1. In its first issue, IJE specifically challenged the trial court's grant of summary judgment on statute of limitations grounds. Because we conclude the trial court properly granted summary judgment on each of the causes of action on substantive grounds, we need not address the merits of IJE's first issue. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) ("We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.").

grounds is meritorious. *State v. $90,235,* 390 S.W.3d 289, 292 (Tex. 2013).

### A. Tortious Interference and Conspiracy

In their motion for summary judgment, appellees challenged IJE's tortious interference and civil conspiracy causes of action by asserting, among other things, that as a matter of law appellees' conduct did not cause any actual damages to the partnerships. *See, e.g., Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991) (explaining that the element of causation is subject to being conclusively negated in a summary judgment proceeding). Both of these causes of action required proof of proximate causation as an element of the alleged tort.[2] Proximate cause itself requires proof of both cause-in-fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). The test for cause-in-fact is whether the tortious conduct was a substantial factor in bringing about the alleged injury, *i.e.,* a factor without which the injury would not have occurred. *See id.* The defendant's conduct was not a substantial factor if it did no more than furnish a condition that made the plaintiff's injury possible. *Stanfield v. Neubaum,* 494 S.W.3d 90, 97 (Tex. 2016); *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004). Even when some modicum of a causal nexus is established, the conduct of the defendant may be deemed too attenuated from the resulting injury to the plaintiff to be a substantial factor in bringing about the harm. *Mason,* 143 S.W.3d at 799-800.

An injury is shown to be foreseeable if a person of ordinary intelligence and prudence would have reasonably anticipated it under the circumstances. *Doe,* 907 S.W.2d at 478.

While there can be more than one proximate cause of an injury, a new and independent, or superseding, cause may "intervene[] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause." *Stanfield,* 494 S.W.3d at 97 (quoting *Dew v. Crown Derrick Erectors, Inc.,* 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.)). Such superseding cause destroys any causal connection between the defendant's tortious conduct and the plaintiff's harm, thus precluding the plaintiff from establishing the defendant's conduct as a proximate cause. *See id.*

In alleging tortious interference and conspiracy against appellees, IJE has consistently focused on the same causative conduct, asserting essentially that in making the original loans to Radnor and inducing Radnor to do so, ICNB (appellee Amegy's predecessor) and Pritchard (ICNB's president at the time) tortiously interfered with the partnership agreements and conspired with Radnor and Beucler to commit fraud and breach their fiduciary duties to the partnerships. IJE alleges as damages the ultimate payoff of the KeyBank construction loan upon the sale of the Project using assets that otherwise would have gone to the partnerships. Approximately $1.4 million of the payoff amount can be

---

**2.** The elements of tortious interference with a contract are (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) *the act was a proximate cause of damages*; and (4) actual damages or loss occurred. *See ACS Inv'rs, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997). An actionable civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means as well as a meeting of the minds on the object or course of action and *actual damages as the proximate result* of the conspiracy. *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 881 (Tex. 2010).

traced back to the original loans from ICNB that used the partnership tracts as collateral. According to IJE, the wrongful making of the original loans proximately caused the loss to the partnerships of that $1.4 million. IJE attempts to forge a "chain of causation" from the original loans to the payoff.[3]

IJE's theory runs afoul of two interconnected difficulties: first, even assuming the original loans were wrongfully obtained, the liens securing the loans were released with no loss, no actual damages having occurred to the partnerships; and second, at least three intervening acts occurred between the original loans and the alleged damages. The summary judgment evidence established that when Radnor obtained the TCB loan, it used the proceeds from that loan to pay off the ICNB loans and the ICNB liens on the partnership tracts were then released. From that point forward, appellees had no involvement with Radnor, Beucler, or the partnership tracts. Appellees did not foreclose on the liens and did not interfere with the partnerships' use or enjoyment of the tracts. IJE argues that without the original ICNB loans, there would have been no refinancing by TCB, but this fact by itself does not make appellees responsible for the fact that TCB accepted the partnership tracts as collateral. See Stanfield, 494 S.W.3d at 99 (explaining that the mere fact original tortious conduct is a "but for" cause of intervening conduct does not make the first actor liable for the conduct of the second). TCB's making of the refinancing loan was a new and independent act. Moreover, TCB also did not foreclose on its liens before that loan was paid off. This time, the money used for the payoff was received as part of a much larger loan, the construction loan from KeyBank. Again, appellees were not responsible for Key-Bank's accepting the partnership tracts as collateral for this loan. See id. KeyBank's action was also new and independent conduct.

The next link in IJE's chain of causation may be its weakest. According to IJE's allegations, the KeyBank construction loan was not foreclosed upon but, instead, the $1.4 million of that loan traceable to the original ICNB loans was paid off by diverting proceeds from sale of the Project that should have gone to the partnerships. This purported decision—to use partnership assets to pay debt owed by Radnor for money transferred to FAS—is what actually caused injury, if any, to the partnerships. Apart from their making the original loans in 2001 and 2002, IJE does not allege appellees had any role in or awareness of the decision to use partnership funds in this manner. All of the summary judgment evidence indicates that once the ICNB liens were released on the tracts, appellees no longer played a role in the alleged chain of causation. We hold that attempting to trace causation from the making of the original loan, through two subsequent refinancings and an allegedly fraudulent diversion of partnership assets to pay off the third loan, stretches the concept of legal causation too far. The alleged harm is simply too attenuated from the alleged conduct of these defendants and insufficiently foreseeable for liability to follow. See id. at 97-99 (explaining how intervening conduct, even when traceable in some way to the original conduct of a defendant, may supersede the original conduct such that liability is attributable only to the intervening conduct); Mason, 143

---

**3.** At times in its briefing, IJE claims its injury occurred as soon as the proceeds of the original loans were disbursed, but at other points in the briefing and in oral argument, IJE clarified that such disbursement was the wrongful act from which the chain of causation began but was not itself the claimed injury.

S.W.3d at 800 ("Often ... the causal link between conduct and injury will be too remote to be legally significant when two separate and sequential tortious incidents join to lead to the injury.").[4] Because appellees conclusively demonstrated that their conduct was not the proximate cause of the alleged damages for tortious interference and conspiracy, the trial court did not err in granting summary judgment against these causes of action.

## B. Aiding and Abetting

■ The analysis of causation and damages for IJE's aiding and abetting cause of action is slightly different from the tortious interference and conspiracy causes of action discussed above, but it ends with the same conclusion.[5] The elements for IJE's aiding and abetting claim are: (1) the primary actor committed a tort; (2) the defendant had knowledge that the primary actor's conduct constituted a tort; (3) defendant had intent to assist the primary actor; (4) defendant gave the primary actor assistance or encouragement; and (5) defendant's conduct was a substantial factor in causing the tort. *See Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). Causation therefore plays into the analysis twice: once as an element of proof

required for the underlying tort and once in establishing that the defendant's conduct have been a substantial factor in causing the underlying tort. The damages would be those caused by the underlying tort.

The alleged underlying torts in this case were Radnor and Beucler's fraud and breach of fiduciary duty in obtaining the original ICNB loans using the partnership tracts as collateral but then using the proceeds for non-partnership purposes, *i.e.*, enhancing the balance sheet of an unrelated company, FAS. As discussed above, obtaining the original loans in this manner, even if wrongful, did not proximately cause actual damages to the partnerships. The partnerships' actual damages occurred, if at all, when partnership assets were diverted to the KeyBank construction loan. As also discussed, the summary judgment evidence indicates appellees had no role in this intervening diversion of assets or in the two intervening refinancings of the original loans. As with IJE's tortious interference and conspiracy claims, the alleged harm is simply too attenuated from the alleged aiding and abetting conduct and insufficiently foreseeable for liability to follow. *See Stanfield*, 494 S.W.3d at 97-99;

---

**4.** IJE suggests, without directly alleging, that as co-conspirators, appellees can be held responsible for the subsequent actions of Beucler and Radnor in diverting the partnership assets to pay off the loan. However, the alleged unlawful purpose of the conspiracy was the original ICNB loans. As explained in the text above, the evidence indicates that those loans were paid off and the associated liens released without any actual damages accruing to the partnerships. The evidence further established appellees had no role in the subsequent intervening conduct. In short, the alleged injury to the partnerships was too attenuated from the alleged conspiracy for liability to be attributed to appellees.

**5.** Appellees made statements in their motion indicating that they were challenging causa-

tion and damages for all three causes of action, for example, "The evidence in this case establishes there was no harm or damages to Plaintiff or to the Partnerships as a result of the use of the properties as collateral for ICNB's 2001 and 2002 Loans to Beucler/Radnor, which were released in 2003." We agree the alleged causative conduct and damages was essentially the same for all three claims. Moreover, in their reply to IJE's response to the motion, appellees clearly challenged causation and damages on each of the causes of action. The parties have additionally engaged on this issue in post-submission letter briefs. Accordingly, we conclude that appellees challenged causation and damages as a ground for summary judgment on IJE's aiding and abetting cause of action.

*Mason*, 143 S.W.3d at 800. Because appellees conclusively established that their conduct was not the proximate cause of the alleged damages for aiding and abetting, the trial court did not err in granting summary judgment against this cause of action.

Because the trial court did not err in granting summary judgment against IJE's claims, we overrule IJE's second issue.

## II. Motion for Expenses

■ In their sole issue in the cross-appeal, appellees contend the trial court abused its discretion by failing to rule on their motion for expenses pursuant to Texas Business Organizations Code section 153.404. That section provides, among other things, that in a derivative action, "[t]he court, on final judgment for a defendant and on a finding that suit was brought without reasonable cause against the defendant, may require the plaintiff to pay reasonable expenses, including reasonable attorney's fees, to the defendant, regardless of whether security has been required." Tex. Bus. Orgs. Code § 153.404(e). Appellees requested expenses under 153.404 in their answers. When the trial court initially granted summary judgment favoring appellees but noted on its docket that the ruling was "interlocutory," IJE moved for clarification. IJE also filed a motion for summary judgment on appellees' pleaded claims for expenses. Appellees responded to the motion for clarification by requesting the court modify its grant of summary judgment to indicate it was based on statute of limitations as well as substantive grounds. Appellees also filed a Motion for Award of Expenses. A hearing was set for June 10, 2016 on this motion as well as IJE's summary judgment motion on expenses. On May 24, however, the trial court issued a final judgment based on both limitations and substantive grounds without having expressly addressed the motion for expenses or the summary judgment motion on expenses. The parties agree that no hearing ever took place regarding expenses.

■ Appellees do not challenge the finality of the trial court's judgment; instead, they contend that the trial court erroneously failed to consider their motion for expenses.[6] Appellees suggest that although a hearing date had been set for the motion for expenses and IJE's motion for summary judgment challenging the motion for expenses, the trial court refused to consider the motions because by the date set for the hearing, IJE had filed its notice of appeal. In support, appellees cite the trial court's docket entries for the day of the hearing. Those entries, one for the expense motion and one for the motion for summary judgment, each state that the particular motion was "Passed" and "Not heard case on appeal." However, even if we were to consider these docket entries, as urged by appellees, it is unclear who passed the hearing on the motions.[7]

---

**6.** The trial court's final judgment was clearly intended to be, and was, final and appealable. *See generally Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195-96, 200, 204-06 (Tex. 2001).

**7.** To "pass" a hearing simply means "to forego" the hearing. *See* Black's Law Dictionary 516 (2d Pocket ed. 2001). It is commonly understood that a trial court can pass a hearing, for example when a conflict arises or the issue set becomes moot, but a party may also pass a hearing for similar reasons or because the party simply no longer wishes to pursue the matter set. *See, e.g., In re Frank A. Smith Sales, Inc.*, No. 13-16-00020-CV, 2016 WL 748054, at *2 (Tex. App.—Corpus Christi Feb. 22, 2016, no pet.) (mem. op.) (noting a hearing was passed by agreement of the parties); *Washington v. Simmons*, No. 09-11-00246-CV, 2012 WL 4017757, at *1 (Tex. App.—Beaumont Sept. 13, 2012, no pet.) (mem. op.) (noting trial court passed hearing when counsel failed to appear).

Moreover, the record does not reflect that appellees urged the trial court to rule on the motion for expenses or objected to the trial court's failure to rule. To preserve a complaint for appellate review when a trial court fails to expressly or implicitly rule on a party's timely request, objection, or motion, the party generally must object to the court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 611 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Martin v. Commercial Metals Co.*, 138 S.W.3d 619, 623 (Tex. App.—Dallas 2004, no pet.) (holding party waived issues contained in motions by not obtaining a ruling on the motions or objecting to a refusal to rule); *Law Offices of Lin & Assocs. v. Ho*, No. 14-01-01265-CV, 2002 WL 31319191, at *2 (Tex. App.—Houston [14th Dist.] Oct. 17, 2002, pet. denied) (not designated for publication) ("[A]s the record is bare of any trial court ruling on the motion to reconsider or of Lin bringing such failure to rule to the trial court's attention or otherwise object[ing] to the failure to rule, she has therefore not preserved any error for our review."). Because the record does not reflect that the trial court expressly or implicitly ruled on the motion for expenses or that appellees objected to any refusal to rule, appellees have not preserved the issue of expenses under section 153.404(e) for our review. Accordingly, we overrule appellee's sole issue in the cross-appeal.

Having overruled all issues raised in these appeals, we affirm the trial court's judgment.