# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00193-CV

**Fred Meyers and Amy Colleen Knight, Appellants**

**v.**

**TrustTexas Bank, S.S.B. and ITCOA, LLC d/b/a Independence Title Company, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2016-0297A, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a take-nothing summary judgment rendered by the district court of Comal County. Appellants are Fred Meyers and Amy Colleen Knight. Appellees are TrustTexas Bank, S.S.B. (the Bank) and ITCOA, LLC d/b/a Independence Title Company (the Title Company). This Court will affirm the judgment.

The lawsuit arises from a real-estate transaction in which Meyers and Knight purchased a house financed by the Bank and in which the Title Company acted as the closing agent.

In July 2015, Meyers bought a house on West Coll Street in New Braunfels. Meyers planned to make renovations and then move in once the repairs were completed. Meyers, with his fiancé Knight, financed the purchase of the house, together with construction funds for its remodeling, with a $351,000 loan from the Bank. The Bank's loan funded 100% of the $290,000 purchase price of the house. The remainder of the loan was allocated toward the $101,450 estimated costs for remodeling, of which Meyers contributed 10%.

The closing took place on July 31, 2015. At the closing, Meyers, Knight, and Jimmie Preusser, their remodeling contractor, signed a mechanic's lien contract by which Meyers and Knight agreed to pay Preusser $101,450 for the remodeling job. The mechanic's lien contract established a January 31, 2016 deadline for completion of the remodeling work.

At the closing, Meyers, Knight, the Bank, and the contractor also signed a Tri-Party Agreement confirming that the contractor would be paid $101,450. It further granted the Bank other rights regarding the loan proceeds, including the authority to withhold funds and the right to act as a power of attorney for Meyers and Knight in connection with disbursements of advances to Preusser.

The Title Company prepared a HUD-1 Settlement Statement (HUD-1) for the closing. HUD-1 designated Section 104 as "Draws held for Improvements" in the sum of $101,450 representing the total amount that the contractor would receive.

Not long after closing, the Bank directed the Title Company to disburse $40,450 of the closing funds to the contractor as an advance for the remodeling job. That disbursement, the basis of Meyers and Knight's claims in the lawsuit, was done without the knowledge or consent of Meyers or Knight, and was the product of an apparent misunderstanding or miscommunication between the Bank and the Title Company over which party would hold Meyers's 10% contribution to the financing of the remodeling project.

To reflect this advance, the Title Company prepared a revised HUD-1 Settlement Statement (Revised HUD-1). The revised version is identical to the original with the exception of Section 104, labeled as "Draws held for Improvements by lender" in the amount of $61,000 and a

new section 105 labeled "Balance of MML to Preusser" in the amount of $40,450 advanced to Preusser. The Title Company sent the Revised HUD-1 to the Bank and to Meyers's mortgage broker, but not to Meyers or Knight. A Title Company employee testified on deposition that she erroneously sent the original HUD-1 to Meyers and Knight instead of the revised version.

Meyers's and Knight's summary-judgment proof is that he had no inkling of any advance to Preusser until early September 2015, when he was told by the Bank that the construction account was $61,000, not $101,450. Seeking clarification, Meyers contacted his loan officer at the Bank who emailed him a message attempting to explain the loan transaction. Meyers gained the impression from the loan officer's email that he would have to come up with an additional $40,450 by January 31, 2016, to convert the construction loan into permanent financing. Because he did not have that kind of money readily available, he testified on deposition that he was forced to list for sale on September 19, 2015, an investment property that he owned in Austin.

Meyers then sought and obtained a meeting with the loan officer during the morning of September 22, 2015, to better understand the loan transaction. At that meeting, Meyers immediately discovered that the "missing" $40,450 had, in fact, been advanced to Preusser and that he did not have to come up with an additional $40,450 to fund the $101,450 owed to Preusser under the mechanic's lien contract.[1] Meyers also discovered the existence of the Revised HUD-1 at the September 22, 2015 meeting.

After discovering on September 22 that he did not have to come up with the "missing" $40,450, Meyers, nevertheless, decided to go forward with the sale of the investment property.

---

[1] Meyers testified that he knew from "the minute we walked into [the loan officer's office]" that he did not have to come up with an additional $40,450.

That afternoon, a prospective buyer was negotiating with Knight, who was acting as Meyers's real-estate agent, concerning the terms of a purchase offer for that property, including the purchase price and the broker's commission. During the evening of September 22 a little after 10 p.m., Meyers and Knight received a contract to sell the investment property, which Meyers promptly signed. Even after the contract was signed, however, the parties continued to negotiate certain terms of the agreement and the buyer even suggested the possibility of terminating the contract.

After Meyers learned of the advance, Preusser returned about $21,000 to the Bank. The balance of the advance was spent on labor and materials for the remodeling job. The Bank provided Meyers with an accounting of how Preusser spent the first $40,450 in construction loan proceeds and Meyers acknowledged that none of the expenditures were unreasonable or unjustified.

Preusser finished work around Christmas 2015, over a month before the deadline in the mechanic's lien contract. Meyers moved into the house on December 27, 2015.

Meyers and Knight sued the Bank and the Title Company for damages, asserting claims against both for breach of contract, violation of the Texas Deceptive Trade Practices Act, common-law and statutory fraud, breach of fiduciary duty, negligent misrepresentation, and conspiracy and aiding and abetting. They also asserted a claim against the Bank for violation of the federal Truth in Lending Act. They collectively sought actual and punitive damages in a sum "over $200,000 but less than $1,000,000" as well as treble damages and attorneys' fees.

Meyers and Knight claimed that the conduct of the Bank and the Title Company caused them the following damages: (1) the loss incurred from the forced sale of the investment property; (2) damages resulting from the late completion of the construction project; and (3) additional expenses over and above the construction budget.

4

Both the Bank and the Title Company filed traditional and no-evidence motions for summary judgment. Traditional summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex R. Civ. P. 166a(c); *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). The reviewing court must take as true any evidence favorable to the non-movant and indulge every reasonable inference from the evidence in the non-movant's favor. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A defendant moving for a traditional summary judgment need only disprove one essential element of the plaintiff's claim to prevail. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). A no-evidence summary judgment is appropriate if there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden at trial. Tex. R. Civ. P. 166a(i).

In any cause of action, whether grounded in tort, contract, or a hybrid of the two, causation is the essential element necessary to attribute fault for one's injuries to another. *Cunningham v. Blue Cross Blue Shield of Tex.*, No. 02-06-00363-CV, 2008 WL 467399, at *5 (Tex. App.—Fort Worth Feb. 21, 2008, pet. denied) (mem. op.).

Causation is an element of Meyers's and Knight's multiple causes of action. To support their breach of contract claim, they must show that their alleged damages are the natural, probable, and foreseeable consequence of the alleged breach. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

Meyers and Knight's statutory and common-law fraud claims require them to establish the Bank's and Title Company's acts or omissions were a cause-in-fact of the injury—a

substantial factor in bringing about the injury which would not have otherwise occurred. *See Hartford Fire Ins. v. C. Springs, 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The Title Company, in addition, points out that it cannot be liable for statutory fraud because it was not a party to a transaction involving real estate. Texas Business and Commerce Code section 27.01(c) provides a cause of action for fraud in a transaction involving real estate. The statute does not create a cause of action against a title company or escrow agent because they are not parties to a "transaction in real estate," but instead a transaction in title insurance which is incidental to a transaction in real estate. *American Title Ins. Co. v. Byrd*, 384 S.W.2d 683, 685 (Tex. 1964).

For their negligent misrepresentation claim, Meyers and Knight must show that the misrepresentation was the cause-in-fact of their claimed damages. *See Brown & Brown of Tex., Inc. v. Omni Meals, Inc.*, 317 S.W.3d 361, 389 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

To prevail on their breach-of-fiduciary-duty claim, they must prove that an alleged breach of a duty caused damages to them or an improper benefit to the Bank or Title Company. *Panté Tech. Corp. v. Austin Concrete Sols., Inc.*, No. 03-10-00059-CV, 2010 WL 3927598 at *8 (Tex. App.—Austin Oct. 7, 2010, no pet.) (mem. op.).

Causation is also required for their civil-conspiracy and aiding-and-abetting claims. *See Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In addition, the DTPA claim requires a showing of causation. *See Metro Allied Ins. Agency v. Shihche E. Lin*, 304 S.W.3d 830, 834 (Tex. 2009).

In defense of the district court judgment, the Bank and Title Company argue that their conduct, even if assumed to be wrongful, did not cause Meyers and Knight's claimed damages. This Court agrees.

On the morning of September 22, 2015, at the meeting with the Bank officer, Meyers and Knight learned that the $40,450 was not "missing" but in fact had been advanced to Preusser. They then knew for a certainty that they would not have to come up with an additional $40,450 or any other sum to close on the permanent loan.

After discovering on September 22 that he did not have to come up with $40,450, Meyers decided on his own to go forward with the sale of the investment property. At that point, there was no sales contract. In fact, negotiations with a prospective buyer continued throughout the day and into the evening. In the early evening Knight and the prospective buyer were still negotiating material terms, such as price and commission. At that time, the prospective buyer was still competing with another offer to buy the property. The parties did not finally execute the sales contract until 10:21 p.m. when Meyers returned the signed contract. Even then the parties did not treat the agreement as final. They continued to negotiate terms of the deal, including whether the purchase would be "as is" or whether Meyers would pay for certain repairs to the house, with the buyer raising his right to terminate the contract. The summary-judgment proof establishes that Meyers and Knight learned the truth about the disbursement to Preusser before Meyers reached any agreement to sell the investment property.

Meyers and Knight advance the claim that before discovering the truth about the $40,450 disbursement to Preusser, there was, in fact, in place "an already-agreed sale" of

7

the investment property. The claim is based upon email negotiations between Knight and the prospective buyer. This agreement ignores the basic rule that there is no enforceable contract unless there is an agreement between the parties on all essential terms. *See Southwinds Express Constr., LLC v. D.H. Griffin*, 513 S.W.3d 66, 76 (Tex. App.—Houston [14th Dist.] 2016, no pet).

Meyers and Knight claim further in their affidavits that their professional reputations as real-estate agents would suffer if they backed out of negotiations with the prospective buyer. They provide no factual basis to support these assertions. Unsupported conclusory statements, such as these, are not proper summary-judgment proof. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Meyers and Knight next contend that they were damaged by the conduct of the Bank and Title Company in that it delayed the completion of the remodeling job. This contention is without substance—Preusser completed all the work on the house by Christmas 2015, a little more than a month before the deadline required by the mechanic's lien contract. Meyers moved in on December 27, 2015.

Finally, Meyers and Knight maintain that the conduct of the Bank and Title Company resulted in increased costs for the remodeling job. This Court is satisfied that Meyers and Knight submitted no competent summary-judgment proof in support of their claim. In his deposition, Meyers admitted that Preusser returned $21,000 to the Bank after Meyers learned of the advance. Meyers also conceded in deposition that no part of the $40,450 advanced to Preusser was misspent. Meyers acknowledged that all of the labor and materials were reasonably and justifiably used toward the remodeling project.

8

Without addressing his deposition testimony, Meyers stated in his affidavit that because of the advance he was unable to insist upon competitive bidding, that Preusser offered jobs to his brother and neighbor and the plumber went over budget by almost 100%. But Meyers failed to explain how competitive bidding would have resulted in lower costs or even that he had the right to control Preusser's selection of the subcontractors. Knight in her affidavit stated that she paid $8,700 on the remodeling project that was "a result of losing budgetary leverage over the builder when the Defendants chose to send $40,450.00 of our money to him." As with Meyers's affidavit, Knight's affidavit testimony does not contain specific factual bases, admissible in evidence, from which any conclusions are drawn. Their testimony is conclusory and not competent summary-judgment evidence. *See id.* at 930.

Meyers and Knight claim that the Bank violated provisions of the Truth in Lending Act, *see* 15 U.S.C. § 1602, *et. seq*. In its no-evidence motion for summary judgment, the Bank asserted that Meyers and Knight had no evidence in support of their claims for violation of the Truth in Lending Act. In their response to the no-evidence motion, Meyers and Knight did not dispute the Bank's assertion that there was no evidence that the Bank violated the Act as to Meyers. Accordingly, the district court's take-nothing summary judgment for the Bank on this issue was correct. *See* Tex. R. Civ. P. 166a(i).

In addition, Meyers and Knight did not produce summary-judgment proof that the Bank is a "creditor" as defined by the Truth in Lending Act. Section 1602 of the Act provides:

(g) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the

9

payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).

There is no summary-judgment proof that the Bank "regularly extends . . . consumer credit which is payable by agreement in more that four installments or for which the payment of a finance charge is or may be required." The "creditor" designation is a necessary element for each Truth In Lending violation asserted by Meyers and Knight.

The summary judgment is affirmed.

_____
Bob E. Shannon, Justice

Before Justices Field, Toth, and Shannon*

Affirmed

Filed:   November 21, 2018

* Before Bob E. Shannon, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).