**Affirmed and Memorandum Opinion filed February 9, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00121-CV

## NEW TECH GLOBAL VENTURES, LLC, Appellant

## V.

## KERRY E. NOTESTINE, CONOR H. KELLY, BRIAN HENTOSZ, AND TERRENCE MURPHY, Appellees

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-31696**

## MEMORANDUM OPINION

Appellant New Tech Global Ventures, LLC (New Tech) appeals the trial court's order dismissing its claims against appellees, four Littler Mendelson lawyers (the Littler Lawyers), for legal malpractice. The Littler Lawyers moved to dismiss the case under the Texas Citizens Participation Act. New Tech complains that the trial court erred in granting the motion, contending that (1) the TCPA's

commercial-speech exemption prevents application of the TCPA to its claims, (2) its claims against each of the four lawyers fall outside the scope of the TCPA, and (3) New Tech established by clear and specific evidence a prima facie case for each essential element of its legal malpractice claims. In connection with the latter issue, New Tech also challenges the trial court's order sustaining the Littler Lawyers' objections to statements and opinions of New Tech's experts. New Tech also addresses the movants' statute of limitations affirmative defense. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As this case involves legal malpractice and related claims based on alleged negligent lawyering during a prior litigation, we begin by discussing the prior litigation.

### The *Bercier* Lawsuit

New Tech is a staffing company providing project management and consulting services to independent oil and gas companies operating drilling rigs. Dale Bercier, a drilling supervisor who worked for New Tech, sued New Tech in federal district court in Houston under the Federal Labor Standards Act ("FLSA") in 2017, alleging that New Tech had failed to pay him proper wages for overtime work. Bercier filed the lawsuit not only on his own behalf, but also purportedly on behalf of a class of other similarly situated employees. (The *Bercier* Lawsuit).

New Tech and its general counsel, David O'Neil, had previously retained Littler Mendelson to represent New Tech in other FLSA lawsuits. Appellee Kerry Notestine, a partner in the Houston office of Littler, was the originating attorney and main point of contact for New Tech in the FLSA lawsuits.

As it had done since 2014, New Tech retained Littler to represent it in the *Bercier* lawsuit. Appellee Terrence Murphy, a partner in the Pittsburgh office with

extensive experience handling FLSA actions, served as lead counsel for New Tech in the lawsuit. Appellee Brian Hentosz, an associate in the Pittsburgh office, assisted Murphy.   Murphy, as lead counsel, supervised Hentosz's work.[1]

Under the FLSA, a class member who wishes to participate in a class action must affirmatively "opt into" the class.  Early in an FLSA case, the attorneys for both sides will often negotiate the terms of a class definition for a federal district court to include in a conditional class certification order under which potential class members may consent to participate in — or, in other words, "opt into" — the class action.

Murphy and Hentosz negotiated with Bercier's counsel at Kennedy Hodges over the terms of an agreed joint stipulation on conditional class certification. After Bercier's lawyers proposed that the class include all of New Tech's "current and former consultants and/or supervisors," Murphy and Hentosz countered, seeking to limit the class to include just New Tech's drilling supervisors. Importantly, Bercier was a drilling supervisor and not a completion supervisor.[2] Bercier's counsel agreed to Hentosz's proposed class definition, and the district court signed a conditional class certification order that defined the class to include all "*drilling supervisors* paid a day rate and classified as independent contractors who performed services through Defendant at any time from the date of mailing to the Present."

_____

[1] Conor Kelley worked on the case from the Houston office. His principal involvement was to attend hearings.  Though New Tech asserts no unique allegations with respect to his conduct, he is grouped with the other appellees for acts of alleged legal malpractice that New Tech asserted collectively against all appellees.

[2] In its opening brief New Tech explains *drilling supervisors* supervise the drilling stage of an oil and gas operation — *i.e.*, the initial stage in which the operator spuds a well and drills a hole into the earth, and *completions supervisors* supervise the completions stage of an oil and gas operation — *i.e.,* the stage in which the operator pushes steel pipe into the hole and then cements and perforates the casing for production.

After the order was signed, Bercier's attorney asked Murphy and Hentosz to produce documents identifying the names of all potential class members. Instead of producing a list limited to New Tech's drilling supervisors, Hentosz gave Kennedy Hodges a list that he had received from David O'Neil's paralegal at New Tech before negotiating the class definition with Bercier's counsel— a list that included New Tech's *completions* supervisors in addition to New Tech's *drilling* supervisors.

When confronted by O'Neil about sending the expanded list of class members, including drilling supervisors, Hentosz told O'Neil that the strategy from the beginning was for the class to include both drilling and completions supervisors. The Littler Lawyers maintain that the disclosure was intentional. Notestine sent an email to O'Neil summarizing Murphy's reasons in greater detail.

Unsatisfied with the explanation, New Tech fired the Littler Lawyers and hired another lawyer, Annette Idalski, to represent them in the *Bercier* lawsuit. Idalski asked the district court to strike or sever the claims of the completions supervisors who had opted to participate in Bercier's FLSA collective action, and filed a motion to compel each of the plaintiffs to pursue individual arbitrations of their respective FLSA claims.

**New Tech's Malpractice Action**

New Tech filed its state court action for legal malpractice action against appellees on May 26, 2020. The principal if not exclusive factual basis for the lawsuit is Hentosz's disclosure to Bercier's lawyers of the names of New Tech's completions supervisors.

The Littler Lawyers filed their TCPA Motion to Dismiss on July 1, 2020. The Parties engaged in discovery, including multiple depositions, and New Tech

4

filed a response to the TCPA motion, amended its pleadings and supplemented its arguments and evidence in response to the TCPA several times. New Tech attached several declarations of various witnesses to support its response to the TCPA motion, including the declaration of Annette Idalski, who provided expert testimony to support elements of its legal malpractice claim. The Littler Lawyers objected to many statements in Idalski's declaration, and after the trial court heard the parties' arguments on the objections, signed an order sustaining many of New Tech's objections.

After a hearing, the trial court granted the TCPA motion and dismissed New Tech's claim for legal malpractice on October 5, 2020. After New Tech nonsuited its remaining claims against the Littler Lawyers and the trial court entered an order granting attorneys' fees, the trial court entered a final judgment on February 24, 2021.

## II. ISSUES AND ANALYSIS

On appeal, New Tech raises four issues: whether the commercial speech exception applies, whether its legal malpractice claims fall within the scope of the TCPA, whether New Tech established by clear and specific evidence a prima facie case for each of the essential elements of its legal malpractice claim, and whether the Littler Lawyers established entitlement to judgment as a matter of law on their statute of limitation defense. We only address the first three.[3]

### 1. Would the commercial-speech exemption operate to preclude application of the TCPA with respect to New Tech's malpractice claims?

---

[3] Appellees request that we not affirm on the basis of its statute of limitations defense; their reasoning, in part, is based on an acknowledgement that "the trial court is unlikely to have based its dismissal on the statute of limitations defense." We agree with the parties; the case lends itself to a straightforward application of the tolling rule applicable to malpractice cases, such that the statute of limitations would not bar New Tech's legal malpractice claims. *See Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991).

5

New Tech challenges the trial court's implicit rejection of its argument that the commercial speech exemption operates to preclude the application of the TCPA to its malpractice claims. The Supreme Court has interpreted the statute to provide for the exemption when

> (1) the defendant was primarily engaged in the business of selling or leasing goods or services,
>
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and
>
> (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Id.* at 688; Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2); *Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Presuming that the Littler Lawyers were primarily engaged in the business of selling legal services and made the challenged statements or engaged in the conduct on which the claim is based as a seller of legal services, we veer straight to the latter requirements, which stand out as particularly inapplicable. With respect to the third element, we have explained that "[t]he exemption is not established unless the challenged statement was 'about' the speaker's particular goods or services, or the speaker's business of selling them." *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 154 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The disclosure here did not occur in the course of the Littler Lawyers *selling* legal services. The disclosure was not *about* Littler's legal services; rather, the disclosure made was part of the act of providing legal services

6

for New Tech. *Winstead PC v. USA Lending Group, Inc.*, No. 12-20-00172-CV, 2021 WL 1047208, at \*4 (Tex. App.—Tyler Mar. 18, 2021, pet. filed) (finding that the filing of a motion for entry of default judgment in the context of legal malpractice claim did not satisfy the third prong).

New Tech contends that with respect to the fourth–*intended audience*–element of the exemption, the test permits for multiple intended audiences and allows consideration of the intended audience of conduct, not merely those of statements and communications. Be that as it may, it does not change our analysis. The conduct or communication at issue in the case is no mixed bag of various and diverse occurrences. It is best summarized in one sentence of New Tech's petition:

> [The Littler Lawyers] mistakenly forwarded hundreds of names and contact information to the underlying Plaintiffs' counsel which should never been included in the underlying lawsuit.

New Tech was not the intended audience of this disclosure; the disclosure was addressed to Bercier's attorneys. Bercier's attorneys were neither actual or potential customers of Littler's legal services.

In arguing in favor of the application of the commercial speech exemption, New Tech shifts the focus from the Littler Lawyers' disclosure of drilling supervisors' names to Bercier's counsel to communications Hentosz and Murphy had with New Tech's general counsel before and after the disclosure. In the context of legal representation, there are viable examples where the commercial exemption serves a purpose. *See, e.g., Diogu Law Firm PLLC v. Experience Infusion Centers LLC* 01-19-00494-CV, 2020 WL 1681182, at \*2 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, no pet.). New Tech makes no claim for unpaid fees, nor are the communications alleged to have been made to an actual or potential customer of Appellees in furtherance of a commercial transaction or business deal.

7

We conclude the trial court's implicit rejection of the commercial speech exception was proper. We overrule New Tech's first issue.

**2. Do New Tech's claims fall within the scope of the TCPA? (Did the Littler Lawyers establish that New Tech's legal action is based on or in response to their exercise of the right to free speech, the right to petition, or the right of association?)**

New Tech challenges the trial court's implicit finding that its legal malpractice claims are based on or in response to the Littler Lawyers' exercise of the right to free speech, the right to petition, or the right of association.

To invoke application of the TCPA, each of the Littler Lawyers, as the movants, had the initial burden of showing that New Tech's claims against them were based on or in response to their respective exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (Vernon Supp. 2021).

Only the "exercise of the right to petition" is implicated in this case, and its statutory definition includes "a communication in or pertaining to ... a judicial proceeding." *Id.* § 27.001(4)(A). A "communication" is broadly defined as "the making or submitting of a statement or document in any form or medium." *Id.* § 27.001(1); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); Statements made by a lawyer on behalf of his client are covered by the TCPA. *Youngkin*, 546 S.W.3d at 681. Barring any dispute of the occurrence, an attorney's communications with counsel of record made in the course of representing a party in an actual pending lawsuit about the lawsuit is a communication pertaining to a judicial proceeding. *See Jetall Companies, Inc. v. Hoover Slovacek LLP*, No. 14-20-00691-CV, 2022 WL 906218, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied). And New Tech's essential allegation that "Defendants" collectively acted in a professionally negligent manner by disclosing an overly

8

expansive list of New Tech employee names to Bercier's lawyers in the course of the FLSA lawsuit articulates precisely such claim based on this type of communication.

New Tech insists that we must conduct a scope-analysis as to each appellee separately and asks that delineate separate claims per appellee based on facts provided in discovery. New Tech is correct in pointing out that each of the Littler Lawyers has the burden of showing that New Tech's claims against each of them respectively fall within the scope of the TCPA, but our analysis remains uncomplicated by virtue of New Tech's pleadings. There is no art to interpreting the gravamen of New Tech's allegations, which set out generally a complaint based on all "Defendants" disclosure to opposing counsel during discovery.

New Tech's live pleading states: "Defendants' negligence includes, but is not limited to, the following: . . . (d) producing documentation and/or information that was harmful to Plaintiff and which was not necessary to perform Defendants' duties in the underlying case; and (e) providing a list that included 'completion' supervisors to the underling Plaintiffs' attorney in the FLSA matter." Diving into the evidence in the record does not change our analysis. New Tech's expert affidavit includes blanket assertions against the Littler Lawyers, stating: "***Defendants*** not only sent the 'drilling supervisor' names and contact information, but negligently included and disclosed hundreds of 'completions supervisors' names and contact information to opposing counsel for circulation of the notice." In response to this contention, New Tech suggests that by context (where elsewhere Hentosz and Murphy alone) were alleged responsible for the disclosure, the use of the word "Defendants" implicitly refers to that duo. But this rationale does not account for its expert's affidavit statement: "***Each Defendant*** breached their duty of care to only produce contact information for drilling supervisors and

9

not well completions supervisors unnecessarily expanded the potential class size as evidenced by the opt-in consent forms in the litigation." (emphasis added).

The Littler Lawyers carried their initial burden of demonstrating that New Tech's malpractice claims against each of them were based on the exercise of their right to petition and thus fell within the scope of the TCPA. *See Jetall Companies, Inc.*, 2022 WL 906218, at *3.

We therefore overrule New Tech's second issue.

**3. Did New Tech establish by clear and specific evidence a prima facie case for each essential element of its legal malpractice claim against each of the Littler Lawyers?**

New Tech challenges the trial court's implicit finding that New Tech failed to show by clear and specific evidence a prima facie case for each essential element of its legal malpractice claim against each of the Littler Lawyers.

"The court may not dismiss a legal action under [the TCPA] if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). A prima facie case refers to evidence "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). This "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. The non-movant "is charged with providing enough detail to show the factual basis for its claim and to base opinions on demonstrable facts." *Quintanilla v. West*, No. 04-16-00533-CV, 2020 WL 214757, at *3-4 (Tex. App.—San Antonio Jan. 15, 2020, no pet.). "Clear and specific" requires evidence that is "unambiguous, sure, or free from doubt" and is "explicit or relating to a particular named thing." *Lipsky*, 460 S.W.3d at 590-91. The evidence should establish the

facts of when, where, and what occurred, the nature of the conduct, and any damages. *Id*. Pleadings are considered evidence for purposes of satisfying the TCPA burden. CPRC § 27.006(a); *Langley v. Insgroup, Inc*., No. 14-19-00127-CV, 2020 WL 1679625, at *4 (Tex. App.—Houston [14th Dist.] Apr. 7, 2020, no pet.). But "[b]are, baseless opinions," "general averments," and "conclusory" statements do not satisfy this burden. *Lipsky*, 460 S.W.3d at 592-93.[4]

To prove a legal-malpractice claim, the client must establish that: (1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016). A lawyer can be negligent and yet cause no harm. And, if the breach of a duty of care does not cause harm, no valid claim for legal-malpractice exists. *See, e.g., Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) (noting that "an abundance of evidence as to [breach] cannot substitute for a deficiency of evidence as to [causation]").

### *Duty*

Though contested, the first two elements are uncontroversial.  The pleadings and undisputed facts plainly establish that Notestine, Kelly, Murphy, and Hentosz were New Tech's lawyers and that each had an attorney-client relationship with New Tech and owed New Tech a duty of care in the course of representing it in the *Bercier* lawsuit.  We can also presume for the sake of argument that a prudent

---

[4] New Tech asks us to consider the record in light of various statements and opinions offered in witness affidavits that the trial court excluded on the Littler Lawyers' objection.  *Walker v. Schion*, 420 S.W.3d 454, 457 (Tex. App.—Houston [14th Dist.] 2014, no pet.)(noting in the context of the appellate court's de novo-summary judgment it will not consider evidence that was excluded by the trial court unless that evidentiary ruling is timely and successfully challenged on appeal).  It properly challenged and preserved its issue.  For efficiency purposes, we first presume error and consider all statements and opinions in the affidavit as not excluded unless otherwise addressed herein.

attorney has a duty to limit client financial loss and expenses.

*Breach of the Standard of Care*

As to the second element, we presume for the sake of argument that each of the Littler Lawyers breached the duty of professional care owed to New Tech by producing documentation and/or information that was allegedly harmful to New Tech that they were not obligated to provide, or for (as specifically alleged) providing a list that included completion supervisors to the underlying Plaintiff's attorney in the FLSA matter.

*Causation*

The causation element of a legal malpractice claim has two components: cause-in-fact and foreseeability. The cause-in-fact component is essentially "but for" causation; it means that the defendants' act or omission must have been a substantial factor in bringing about an injury that, but for the defendants' act or omission, would not have occurred. *Rogers v. Zanetti*, 518 S.W.3d 394, 403 (Tex. 2017). The cause-in-fact component of causation requires "a comparison of scenarios: the actual result and the hypothetical result advanced by the plaintiff." *Starwood Mgmt.*, 530 S.W.3d at 681. Where the plaintiff alleges that the defendants' malpractice caused an injury other than the loss of a lawsuit, the causation standard compares "the difference between the result obtained for the client and the result that would have been obtained with competent counsel." *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013); *see also Starwood Mgmt.*, 530 S.W.3d at 678-79 (describing the cause-in-fact component as the "suit-within-a-suit inquiry"— where the actual result with the alleged misconduct or omission is compared to a hypothetical result the plaintiff claims would have occurred absent the misconduct or omission). Evidence of causation must show that the hypothetical result would, more likely than not, have been different from the actual

result. *Id*. The foreseeability component means that the defendants reasonably should have anticipated the dangers that could result from their negligent conduct. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016).

Thus, in considering whether New Tech presented clear and specific evidence to provide the trial court with a basis to conclude that providing a list that included completion supervisors (rather than only drilling supervisors) caused New Tech to incur litigation costs (totaling approximately $400,000) associated with defending FLSA claims against completion supervisors that it would not otherwise incur. We conclude New Tech failed to do this.

In reviewing the record, we consider New Tech's pleadings, the evidence supplied in response to the TCPA motion, including the declarations of Annette Idalski, David O'Neal, and Lisa Goins. The allegations and evidence available to evaluate New Tech's prima facie case for causation consisted of the following:

- The allegation and witness statements that the Littler Lawyers included completions supervisors in a class list of over 1400 people for conditional certification.

- The allegation that Hentosz sent to *Bercier's* attorneys a list that Goins had sent him which contained names of both drilling and completion supervisors.

- A redacted copy of the list that Goins had sent Hentosz containing the names of completion supervisors, including those who opted-in, and who filed arbitration demands.

- Pleadings and papers from the underlying proceeding, including

  - Order on Joint Stipulation for Conditional Certification and Notice, addressed to Drilling Supervisors defined as "All

13

drilling supervisors paid a day rate and classified as independent contractors who performed services through Defendant at any time from three years from the date of mailing to the Present."

- o Opt-in Consent forms. Evidence that twenty-nine (29) well completions supervisors opted into the litigation, permitting the *Bercier* lawyers to represent them in the case.

- o Three arbitration demands filed by completions consultants: Chad Robinson, Kendall Parker, and Robert Gibbs.

- o Motion to Strike or Sever completion supervisors filed by New Tech's new counsel. Neither party reports if the court ever ruled on the motion, and if it did, the court's disposition.

- Letters from Hentosz to New Tech's general counsel explaining that Plaintiff's counsel threatened a second FSLA action for completion supervisors without producing the names, and discussing ongoing FSLA action in the Southern District of Texas.

The only evidence that appears to address the crucial "case-within-a-case" causation testimony is found in Idalski's expert affidavit which provides the hypothetical alternative result that had there been no disclosure then New Tech's completion supervisors would not have received notice of the lawsuit and become involved in the *Bercier* lawsuit. ("Had these individuals not received notice due to the actions of each Defendant, there is no evidence that they would have been on notice and would have filed arbitration demands against New Tech."). The result in the hypothetical "case-within-a-case" is zero liability to completion supervisors in the *Bercier* lawsuit.

14

Although New Tech points to characteristics of the "completion supervisor" that make the job distinct from a "drilling supervisor", New Tech points to no material differences that implicated the relative merits of a "completion supervisor's FLSA overtime claim versus a drilling supervisor's FLSA claim against New Tech, or that any of the completion supervisors' claims were meritless. Moreover, New Tech has not alleged or provided evidence showing that the result of the negligence— incurring litigation costs associated with 29 well completions supervisors opting into the class— cease to exist outside the *Bercier* lawsuit. *See Sheetz v. Slaughter*, 503 S.W.3d 495, 505 (Tex. App.—Dallas 2016, no pet.)(finding that in light of facts demonstrating a legal basis for the claim being defended there was no evidence damages resulting from any alleged legal malpractice).

Nothing in the record demonstrates that by negligently providing notice to completions supervisors that the Littler Lawyers generated an FLSA claim for completion supervisors that any of the completion supervisors could not otherwise pursue individually or collectively, or that the completion supervisors' claims were inherently frivolous FLSA claims such that the only costs associated with defending such claims were the litigation cost in the *Bercier* suit. New Tech has not alleged or shown how the costs it incurred in defending the claims exceeded what it would cost had the FLSA claims been filed separately *in any other context*. And neither party seems to acknowledge by falling short in this regard, that New Tech's lawsuit seeks a type of windfall recovery, for cost-free representation in defense of FLSA claims brought by completion supervisors.

New Tech alleged that it had been involved defending FLSA claims against its employees well before Bercier filed his lawsuit. This would be a positive indicator that the company could incur litigation costs for employee claims not

15

similarly situated to Bercier. Yet, New Tech and its legal malpractice causation expert makes various assumptions to avoid consideration of any alternative hypothetical FLSA claims by completion supervisors. Specifically, New Tech and its expert assumes:

- o that the names of New Tech's completions supervisors would not have been discovered outside of the Littler Lawyer's negligent disclosure. This is contrary to the fact that Bercier's attorneys obtained hundreds of names of drilling supervisors after filing a claim for one drilling supervisor. New Tech does not address the likelihood that Bercier's attorney or another FLSA plaintiffs' attorney could file a similar lawsuit for a New Tech completions supervisor and obtain the same discovery.

- o that Mr. Bercier's lawyer was bluffing when it told the Littler Lawyers he would file another lawsuit like *Bercier's* for a representative class of completion supervisors.

- o the completion supervisors either could not or would not ever raise an FLSA claim that would require it to incur litigation costs.

The trial court did not abuse its discretion in finding such opinions are conclusory, speculative and not evidence. *See e.g., Rogers v. Zanetti*, 518 S.W.3d 394, 408 (Tex. 2017). New Tech has not shown that Bercier's counsel (and the entire the FLSA Plaintiffs' bar) had no other means of obtaining the names of the completions supervisors beyond the Littler Lawyers' disclosure. New Tech has not shown that the names of one or more completions supervisors would be undiscoverable in another action brought by a class representative who held such title.

16

In summary, the causation alleged of the litigation is flawed, as New Tech is seeking recovery of litigation costs of claims based solely on the manner in which claimants were notified, without reference to the viability of the claim. The substance of New Tech's argument is that they incurred damages defending claims in a particular lawsuit. Even if New Tech sufficiently alleged that it would not have incurred hypothetical damages in the *Bercier* lawsuit, it provided no allegation as to why New Tech would *never* incur litigation costs for an FLSA claim against those same completion supervisors. *See Wakefield v. Underwood*, No. 14-19-01004-CV, 2021 WL 3087514, at \*3 (Tex. App.—Houston [14th Dist.] July 22, 2021, no pet.)(must provide evidence a fact finder must be able to reasonably conclude that the result of the underlying lawsuit or a settlement in that lawsuit would have been more favorable to Wakefield compared to what ultimately occurred).

Upon this record, we overrule appellant's third issue.

### III. CONCLUSION

Because New Tech's malpractice claims were not exempt by the commercial speech exception, fell within the scope of the TCPA, and yet New Tech failed to demonstrate a prima facie element of causation or damages, we affirm.


/s/     Randy Wilson
        Justice

Panel consists of Justices Wise, Hassan, and Wilson.

17