2025 Tex. Bus. 54



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| SLANT OPERATING, LLC and SLANT WTX HOLDINGS II, LLC, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Cause No. 24-BC08A-0002 |
| OCTANE ENERGY OPERATING, LLC, | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

¶ 1    Before the Court are Defendant Octane Energy Operating, LLC ("Octane")'s Traditional and No-Evidence Motion for Summary Judgment on Plaintiffs' Damages ("MSJ") filed on October 2, 2025, and Octane's Motion to Strike Plaintiffs' Untimely Summary Judgment Evidence ("Motion to Strike"), filed on November 7, 2025.  After considering the motions and briefs, the timely-filed evidence, and the oral arguments presented by counsel, the Court finds the MSJ should be **GRANTED IN PART** and **DENIED IN PART**.  The Court further finds the Motion to Strike should be **GRANTED**.

## I.  BACKGROUND

¶ 2     This case arises out of a contract dispute between two oil and gas entities. Plaintiffs Slant Operating, LLC ("Slant Operating") and Slant WTX Holdings II, LLC ("Slant Holdings") (collectively, "Plaintiffs") and Octane are entities involved in oil and gas exploration and production in several regions of the state.  Slant Operating, LLC and Slant WTX Holdings II, LLC's Second Amended Petition ("2d Am. Pet.") ¶¶ 20, 24.  As part of their business operations, Slant Operating and Octane operate oil and gas wells.  *Id.* ¶ 24.  Plaintiffs are part of the same family of Slant entities—Slant Operating operates the wells and Slant Holdings owns the leasehold rights for the wells.  *Id.* ¶ 22.

¶ 3     On February 22, 2023, Slant Operating and Octane entered into a letter agreement whereby each entity agreed to reciprocally waive any objections they had to the other's "off-lease penetration point" permit applications ("Letter Agreement").  *Id.* ¶¶ 31-33; 2d Am. Pet., Ex. 1.  Specifically, Slant Operating agreed to waive its right to protest Octane's permit application to drill Octane's Green Gables Wells from a penetration point on Slant Operating's leasehold.  *Id.* ¶ 33.  In turn, Octane agreed to "waive its right to protest future Slant drilling permit applications insofar . . . as they concern Off Lease Penetration Points where Octane is the offset operator of record."  *Id.*  In addition to exchanging waivers, the parties also agreed to provide each other with "daily drilling, completion, and flowback reports for each of the [w]ells" and "[d]aily production data for each of the [w]ells."  *Id.*, 2d Am. Pet., Ex. 1.

¶ 4    According to Plaintiffs, the Letter Agreement "was intended to confer a direct benefit on" Slant Holdings as expressed by Octane's promise to "waive its right to protest future Slant drilling permit applications . . . as they concern Off Lease Penetration Points." 2d Am. Pet. ¶ 34. Plaintiffs also allege Slant Operating's role as operator "is definitionally intended to benefit" Slant Holdings and Octane understood because "Octane is itself an oil and gas operator." *Id.* ¶ 35.

¶ 5    Plaintiffs allege that Octane breached the Letter Agreement by not providing a waiver for Slant Operating to drill the Gardendale Wells off lease. Plaintiffs seek three categories of damages: (1) lost revenue for the six Gardendale Wells; (2) lost revenue for 35 additional future, unidentified wells; and (3) drilling redesign costs for the Gardendale Wells. *See id.* ¶¶ 44-48.

## II.    LEGAL STANDARDS

### A. Motion to Strike

¶ 6    Except on leave of court, a summary-judgment nonmovant must file its response and opposing evidence no more than seven days before the hearing. TEX. R. CIV. P. 166a(c); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (late-filed summary-judgment affidavit improperly before trial court because the record lacked an order granting leave of court); *Winchek v. Am. Exp. Travel Related Servs. Co.*, 232 S.W.3d 197, 206-07 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (untimely supplemental response and affidavit untimely when filed less than three days prior to hearing); *see Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet.

denied) (appellate court presumes trial court did not consider late-filed summary-judgment evidence when nothing in the record—whether in a written order or oral ruling in the reporter's record—indicates the evidence was filed with leave of court).

¶ 7    When a party objects to summary-judgment evidence, Texas Rule of Civil Procedure 166a provides an opportunity to amend and cure any evidence defects prior to the summary-judgment ruling.  TEX. R. CIV. P. 166a(f); *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 749 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("The policy behind rule 166a(f) is to insure all formal objections to summary judgment evidence be raised in the trial court and the opposing party be given an opportunity to amend these formal defects before the trial court rules on the motion for summary judgment.").  But this rule permitting an opportunity to amend must be read in conjunction with the rule requiring leave of court for late-filed evidence.  *Cf. EOG Res., Inc. v. Wall*, 160 S.W.3d 130, 134-35 (Tex. App.—Tyler 2005, no pet.) (trial court erred when it denied party's motion for leave to file supplemental evidence to cure defects of form); *Lawler v. Dallas Statler-Hilton Joint Venture*, 793 S.W.2d 27, 30 (Tex. App.—Dallas 1990, writ denied) (trial court did not err in allowing party to file supplemental affidavits to cure objections because, *inter alia*, party had requested and received leave to file).

## B. Summary Judgment

¶ 8    Summary judgment is governed by Texas Rule of Civil Procedure 166a.  To obtain a traditional summary judgment, the movant "bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."

*ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018) (citing TEX. R. CIV. P. 166a(c)). For a defendant's traditional motion for summary judgment, the defendant satisfies its burden by conclusively negating at least one element of the plaintiff's cause of action or proving all elements of an affirmative defense. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016). The burden then shifts to the plaintiff to raise a fact issue to defeat summary judgment. *Id.* at 97.

¶ 9    To receive a no-evidence summary judgment, the movant has the burden to show there is no evidence of at least one essential element of the nonmovant's claim. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The motion does not require supporting evidence. *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 n.3 (Tex. 2017). Once the movant satisfies their burden, the burden then shifts to the nonmovant to produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). A no-evidence motion for summary judgment is defeated by producing more than a scintilla of evidence. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).

### III.    MOTION TO STRIKE

#### A.    Arguments

¶ 10    Octane asks the Court to strike the affidavit of Tad Fielder ("Fielder Affidavit") as untimely summary-judgment evidence. Plaintiffs filed their response to Octane's MSJ and included Chip Caraway's declaration and Tad Fielder's expert report. Octane objected to both. At the MSJ hearing on October 29, 2025, the Court ordered

Plaintiffs to file their response to Octane's objections no later than November 3, 2025. Plaintiffs timely responded, stating they would file the Fielder Affidavit. Plaintiffs did not file the Fielder Affidavit until the next day.

¶ 11    Octane argues the Court's deadline for Plaintiffs' response to Octane's objections was November 3, 2025, and because Plaintiffs filed the Fielder Affidavit on November 4, 2025, it is untimely. *See* Motion to Strike at 1. Octane argues even if the Affidavit is not stricken for untimeliness, the Court should sustain various objections based on hearsay, lack of foundation, and improper legal conclusions. *Id*. at 1-2.

**B.    Analysis**

¶ 12    The Fielder Affidavit should be stricken from the record. As noted, during the MSJ the Court ordered Plaintiffs to file any objections to Octane's summary-judgment evidence by November 3. By filing the Fielder Affidavit on November 4, Plaintiffs submitted untimely summary-judgment evidence. Although the Fielder Affidavit was an attempt at curing hearsay objections to on-file evidence, Plaintiffs failed to seek additional leave of Court to late file. Accordingly, the Court finds Octane's Motion to Strike should be granted and finds the Fielder Affidavit should be stricken from the record.

**IV.    MOTION FOR SUMMARY JUDGMENT**

**A.    Arguments**

¶ 13    As stated, Octane moves for summary judgment on all three categories of damages sought by both Slant Operating and Slant Holdings: (1) lost revenue/production for the six Gardendale Wells; (2) lost revenue/production for 35 additional unidentified,

future wells; and (3) drilling redesign costs for the Gardendale Wells. *See* Octane's Traditional and No-Evidence Motion for Summary Judgment on Plaintiffs' Damages ("MSJ") at 8-9, 11, 12. In its MSJ, Octane argues Plaintiffs are not entitled to damages under any of these categories because, *inter alia*, Slant Operating does not own leasehold or mineral interests entitling it to lost revenue, Slant Holdings is not an intended third-party beneficiary entitled to damages under the Letter Agreement, and there is no evidence of Plaintiffs' redesign costs. *See* MSJ at 8-9, 11, 12.

¶ 14 Plaintiffs argue they are entitled to costs and loss of production damages from Octane's material breach of the Letter Agreement. *See* Plaintiffs' Response in Opposition to Defendant's Traditional and No-Evidence Motion for Summary Judgment on Plaintiffs' Damages ("Plaintiffs' Resp. to MSJ") at 10, 13. Plaintiffs specifically claim they incurred the costs of redesigning the Gardendale Wells and they lost profits from shortening the Gardendale Wells' and future wells' productive lateral length. *See id.* at 14-15.

## B. Analysis

¶ 15 For the reasons below, the Court finds Octane is entitled to summary judgment on lost revenue/production for the six Gardendale Wells and lost revenue/production for 35 additional unidentified future wells. The Court further finds Octane is entitled to summary judgment as to Slant Holdings only for the Gardendale Wells redesign costs.

1. *Slant Holdings is not entitled to damages as a matter of law.*

¶ 16    Because Slant Holdings is neither a party to nor an intended third-party beneficiary of the Letter Agreement, it is not entitled to damages as a matter of law. Generally, only parties to a contract can sue for its breach. *S. Methodist Univ. v. S. Cent. Jurisdictional Conf. of the United Methodist Church*, 716 S.W.3d 475, 489 (Tex. 2025). However, a third party to the contract can also recover on a breach-of-contract claim "only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam).  Receipt of an incidental benefit does not grant a third party the right to enforce a contract. *Id.* A contract "must clearly and fully express an intent to confer a direct benefit to the third party." *Id.* To determine whether the parties intended to confer a direct benefit, the court must examine the entire contract and give effect to all its provisions to ensure none are rendered meaningless. *Id.* There are no magic words indicating an intent to confer a benefit to a third party. *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011).  But there is a presumption against third-party beneficiary contracts. *See First Bank v. Brumitt*, 519 S.W.3d 95, 104 (Tex. 2017) (citing *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975)).

¶ 17    As stated, Octane seeks summary judgment on Slant Holdings' claim for lost revenue associated with 35 future wells and on Slant Holdings' claim for lost revenue associated with the Gardendale Wells.  It is undisputed that Slant Holdings is not a named party to the Letter Agreement. *See* 2d Am. Pet., Ex. A.  In considering the parties' intent,

the Court finds Slant Holdings is also not an intended third-party beneficiary of the Letter Agreement.[1] The Letter Agreement does not demonstrate *both* parties contracted with the intent to confer a direct benefit to Slant Holdings. There is no reference to Slant Holdings or any third party in any of the provisions. There is also no evidence in the record that during negotiations both Slant Operating and Octane intended to enter into the agreement to directly benefit Slant Holdings. This lack of evidence, taken with the presumption against third-party beneficiary contracts, leads the Court to conclude Slant Holdings is not a third-party beneficiary of the Letter Agreement. Accordingly, summary judgment as to Slant Holdings' damages claims must be granted.

¶ 18    The Court is unpersuaded by Octane's condition precedent argument. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404 (Tex. 2022). "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). Materiality is generally a question of fact, but it can be decided as a matter of law "only if reasonable jurors could reach only one verdict." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam).

---

[1] For a more in-depth analysis regarding the third-party beneficiary issue, see the Court's separate Opinion and Order on the parties' third-party beneficiary motions filed concurrently with this Memorandum Opinion and Order.

¶ 19    Octane argues Slant Holdings is not entitled to damages for the 35 future wells because "it failed to satisfy a condition precedent" when it did not request waivers for those wells. MSJ at 4, 9-11. First, it is undisputed that Plaintiffs only requested waivers under the Letter Agreement for the Gardendale Wells. *See* MSJ, Ex. B (Chip Caraway Deposition Transcript ("Caraway Dep. Tr.")) at 94:3-95:25; Ex. C (Stewart Stover Deposition Transcript ("Stover Dep. Tr.")) at 228:3-228:24. It is also undisputed Octane refused to provide a waiver for the Gardendale Wells and questioned the legal validity of the Letter Agreement at the time of refusal. Plaintiffs' Resp. to MSJ, Ex. Q. As Plaintiffs correctly argue, these actions likely amount to a material breach of the contract, meaning Slant Operating was not required to satisfy any conditions precedent to bring a breach of contract claim for the 35 future wells. *See* Plaintiffs' Resp. to MSJ at 16-17. Even if materiality cannot be determined as a matter of law, the evidence presents a fact question on this issue. Therefore, Octane's motion for summary judgment on conditions-precedent must be denied.

¶ 20    Lastly, because Slant Holdings is neither a signatory nor a third-party beneficiary of the Letter Agreement, it is not entitled to damages for any future wells. Octane argues Slant Holdings is not entitled to damages for future wells because there is no evidence revealing the owner of the future wells' minerals.[2] MSJ at 4. But the Court need not determine whether Slant Holdings would be entitled to lost revenue for the 35

---

[2] In fact, there is evidence that Plaintiffs do not even know *where* the future wells would be located. *See* MSJ, Ex. B (Caraway Dep. Tr.) at 98:3-106:20. It follows that it would be nearly impossible to determine the leasehold or minerals rights of wells that have not yet been identified by location.

future wells by virtue of ownership because Slant Holdings is neither a signatory nor an intended third-party beneficiary of the Letter Agreement. Plainly, whether Slant Holdings has minerals interests in the future wells is of no consequence. Octane's motion for summary judgment on this issue must be granted.

¶ 21    For the reasons above, Octane is entitled to summary judgment on Slant Holdings' damages claims.

2. *Slant Operating is not entitled to lost revenue or production as a matter of law.*

¶ 22    Octane is entitled to summary judgment on Slant Operating's claim for lost revenue from the 35 future wells and lost revenue from the Gardendale wells. Plaintiffs concede they never owned the Gardendale Wells' mineral assets. *See* 2d Am. Pet. ¶ 22 ("Slant WTX Holdings II, LLC is a company that owns the leasehold rights from which Slant Operating develops the oil and gas estate (including the leasehold rights at issue under the [Letter Agreement])."); MSJ, Ex. A-1 (Slant Holdings' Interrogatory Response Nos. 5, 10) ("Slant WTX Holdings II, LLC is the 100% working interest and associated net revenue interest owner of the Gardendale Wells and wells for which Slant seeks damages in Section 12.") ("Slant WTX Holdings II, LLC is the 100% working interest and associated net revenue interest owner of the Gardendale Wells."); Ex. A-3 (Slant Operating Requests for Admission Response Nos. 22-32); Plaintiffs' Resp. to MSJ at 10 ("Slant Holdings owns the assets on which Slant Operating operates."). Plaintiffs' representatives have also testified Slant Operating does not own leasehold or mineral interests. *See* MSJ at Ex. C (Stover Dep. Tr.) at 26:18-26:25. Further, Plaintiffs have presented no evidence that Slant Operating (1)

currently owns or has ever owned any leasehold interests in the Gardendale Wells or any other wells or (2) receives or has ever received any revenue for the wells it operates or has operated. Because Slant Operating does not own or have rights to any of the minerals in the wells at issue, it has no right to recover damages for lost revenue associated with the minerals produced from those wells. Slant Operating also cannot recover these damages on behalf of the mineral owner Slant Holdings (or some other third party for the future wells) because Slant Holdings is not an intended third-party beneficiary of the Letter Agreement.

¶ 23    The Court is also unpersuaded by Plaintiffs argument that "economic harm from the Gardendale Wells is felt directly" by Slant Operating because it "holds the treasury account to which Slant Holdings regularly transfers *its* revenues." Plaintiffs' Resp. to MSJ at 10-11 (emphasis added). Having custody or control of Slant Holdings' treasury account—which Plaintiffs concede contains Slant Holdings' revenues, not Slant Operating's—does not equate to revenue entitlement. Any loss in revenue is felt by Slant Holdings because it is the party earning production revenue.

¶ 24    Accordingly, Octane is entitled to summary judgment on Slant Operating's damages claim for lost revenue associated with the Gardendale Wells and the 35 future wells.

3. *Slant Operating has produced evidence of redesign costs and additional expenses incurred as a result of Octane's breach.*

¶ 25    Octane is not entitled to summary judgment on Slant Operating's incurred costs associated with exploring options for redress and redesigning the Gardendale Wells drilling plan. Octane argues there is no evidence Slant Operating incurred damages in

redesigning the Gardendale Wells drilling plan. *See* MSJ at 3. However, Plaintiffs produced invoices for professional regulatory services from an RRC expert who provided guidance on how to proceed with drilling.[3] Plaintiffs' Resp. to MSJ. at 14; Ex. M. Slant Operating met its burden by providing more than a scintilla of evidence of the expenses it incurred as a result of the breach. Octane is therefore not entitled to summary judgment on this category of damages.

4. *The record contains evidence of Slant Operating's expectancy damages.*

¶ 26    Octane is not entitled to summary judgment on Slant Operating's expectancy damages. "Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.). Expectancy damages seek to "restore an injured party to the position he would have been in had the contract been performed." *Id.*; *see also MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106 (Tex. 2023) (describing benefit-of-the-bargain damages as deriving from an expectancy theory). To calculate expectancy damages, "it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it." *Id.*; *see also Qaddura v. Indo-Eur. Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.—Dallas 2004, pet. denied) ("The benefit of the bargain is measured by the prevailing party's anticipated receipts and losses caused by the breach less any cost or

---

[3] Plaintiffs also produced invoices for legal services and redesign and re-surveying of the Gardendale Wells, but those invoices were billed to other non-party Slant entities. *See* Plaintiffs' Resp. to MSJ at Ex. N-O.

other loss he has avoided by not having to perform."). This calculation includes consequential losses, which are foreseeable damages caused by the breach. *See Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022).

¶ 27  Contrary to Octane's argument, the produced regulatory services invoices are evidence Slant Operating incurred consequential losses, and therefore expectancy damages, as a result of Octane's breach. *See* Plaintiffs' Resp. to MSJ at Ex. M. These expenses were foreseeable, as Octane understood at the time of the Gardendale Wells waiver request that Slant Operating had already made plans to drill off-lease and that Octane's refusal to waive objections would likely lead Slant Operating to incur drilling reconfiguration expenses. The invoices are sufficient to defeat Octane's argument and its request for summary judgment on this issue.

5.  *Slant Operating has produced no evidence of reliance damages.* [4]

¶ 28  There is no evidence establishing Slant Operating's reliance damages. "Reliance damages, similar to out-of-pocket recovery, reimburse one for expenditures made towards the execution of the contract in order to restore the status quo before the contract." *Sharifi*, 370 S.W.3d at 149. Octane argues it is entitled to summary judgment because there is no evidence of Slant Operating's reliance damages. To the extent Slant Operating brings forth a reliance theory, the Court agrees: the record is devoid of any expenses that Slant Operating incurred in reliance on Octane's promise to perform under the Letter Agreement.

---

[4] While Plaintiffs do not allege a specific theory/category of reliance damages in their petition, the Court will nonetheless address Octane's argument.

To the extent that Slant Operating seeks reliance damages in this case, Octane is entitled to summary judgment on such damages.

## V.        CONCLUSION

¶ 29    Consistent with this opinion, it is **ORDERED** that Octane's Motion for Summary Judgment Motion is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Octane's Motion to Strike is **GRANTED**.

JERRY D. BULLARD
Judge of the Texas Business Court,
Eighth Division

SIGNED: December 22, 2025